INSULAR INDUSTRIAL & AGRICULTURAL EXPOSITION ASSOCIATION, INC., demandante y apelante, *v.* FRANCISCO P. CINTRÓN, demandado y apelado. FRANCISCO P. CINTRÓN, demandante y apelado, *v.* INSULAR INDUSTRIAL & AGRICULTURAL EXPOSITION ASSOCIATION, INC., demandada y apelante.

Núms. 7351 y 7352.—*Sometidos:* Noviembre 10, 1937.
*Resueltos:* Febrero 4, 1938.

632

*R. Rivera Zayas* y *Joaquín Velilla,* abogados de la apelante; *Besosa & Besosa,* abogados del apelado.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

Francisco P. Cintrón radicó demanda contra la Insular Industrial & Agricultural Exposition Association, Inc., alegando haberle suministrado en varias ocasiones diferentes partidas de dinero en calidad de préstamos para la explotación del negocio de ésta, quedando un saldo de $2,208.46, que no le ha pagado, no obstante haber reconocido dicha deuda, y ser requerida de pago.

Declarada sin lugar una excepción previa de falta de hechos, la demandada radicó una moción solicitando de la corte que, de acuerdo con el artículo 124 del Código de Enjuiciamiento Civil, ordenara al demandante que le suministrara "un pliego de particulares especificando todas y cada una de las partidas que constituyen la suma global que se reclama, expresando el origen y concepto de cada una de ellas." La corte declaró con lugar esta moción y ordenó que se suministraran los particulares solicitados, cosa que el demandante no hizo.

La demandada contestó negando específicamente todas las alegaciones de la demanda y aduciendo como única defensa especial el hecho de no habérsele suministrado los particu-

lares solicitados, razón por la cual no debía permitirse al demandante ofrecer prueba en apoyo de su demanda, de acuerdo con lo dispuesto en el artículo 124 del Código de Enjuiciamiento Civil..

La Insular Industrial & Agricultural Exposition Association, Inc., interpuso ante la misma corte de distrito una demanda contra Francisco P. Cintrón en cobro de la suma de $1,300, alegando que en 22 de junio de 1934 le había arrendado cinco espacios para explotar tres picas y dos hipódromos, así como también otro espacio para un kiosco, todos dentro de los terrenos en que la demandante celebraba una feria-exposición en San Juan, y que Cintrón no le había pagado el importe de los arrendamientos, que era el de $250 por los espacios para picas e hipódromos, y el de $50 para el del kiosco.

En su contestación, Cintrón negó en general los hechos aducidos en la demanda, y al mismo tiempo contrademandó alegando que, agotados los recursos con que contaba la corporación demandante, le hizo en su carácter de director y vicepresidente de la misma préstamos ascendentes a $1,700, que no le han sido pagados.

Radicó la demandante entonces una moción para que Cintrón le informara qué partidas comprendían la cantidad reclamada, y el concepto de cada una de ellas, apercibido de que si así no lo hacía, quedaría, de acuerdo con el artículo 124 del Código de Enjuiciamiento Civil, imposibilitado de presentar evidencia en apoyo de las mismas. Esta moción fué declarada con lugar y los particulares solicitados ordenados, en la forma que fueron solicitados, a pesar de la oposición del demandado y contrademandante, quien no obstante, los suministró, aunque en forma tan vaga, imprecisa y general que escasamente son lo que pretenden ser. La Insular Industrial & Agricultural Exposition Association, Inc., a su vez, contestó la contrademanda, negando generalmente los hechos y aduciendo como única defensa especial que debía declararse sin lugar la contrademanda y no permitirse prueba

de sus alegaciones, por no haberse suministrado los particulares solicitados con los detalles y precisión necesarios.

El día de la vista en la corte inferior estipularon las partes que ambos pleitos se viesen conjuntamente, y así se hizo. Procedieron entonces las partes a presentar su evidencia, y en 26 de diciembre de 1935 dictó la corte sentencia en los dos pleitos condenando en el núm. 7352 a la corporación demandada a pagar al demandante Cintrón la cantidad de $2,008.46 (*sic*), más intereses legales hasta su total pago, con más costas y desembolsos, incluyendo en las mismas honorarios de abogado, y sin lugar la demanda y la contrademanda en el núm. 7351, sin especial condenación de costas. De esas sentencias apeló únicamente la Insular Industrial & Agricultural Exposition Association, Inc. Examinemos en primer término el recurso núm. 7352.

 El primer error que se le atribuye a la corte sentenciadora consiste en haber declarado sin lugar la excepción previa formulada por la apelante. Sostiene ésta que "tratándose de una corporación y teniendo en cuenta que Cintrón era uno de los oficiales y directores de la misma y no obstante que en tal carácter debía procurar de buena fe que se cumplieran los compromisos de la entidad corporativa, es indudable que una transacción en virtud de la cual un oficial o director de una corporación se convierta en acreedor de ésta debe haber sido previamente autorizada debidamente por la corporación. 14A C. J. pág. 132." Además, que no se alega en la demanda que la deuda reclamada fuera líquida, y por consiguiente exigible, invocándose aquí lo resuelto en *E. Rubio e Hijos* v. *Carrasco*, 26 D.P.R. 255.

No cometió, a nuestro juicio, la corte inferior este error. En cuanto al primer fundamento en que descansa, resulta elemental ya, que una excepción previa no puede basarse en hechos que no aparezcan expresamente alegados. *Fernández* v. *Pastoriza*, 43 D.P.R. 896; *Ojeda* v. *Coll & Gelabert et al.*, 26 D.P.R. 538, y *Guasp* v. *Rosch*, 9 D.P.R. 348. Si examina-

mos ahora la demanda, la encontraremos huérfana de toda alegación al efecto de que Cintrón fuera uno de los oficiales y directores de la corporación demandada, y como en ese hecho precisamente es que descansa la excepción, no pudo haber sido declarada con lugar. Con respecto al otro fundamento de la excepción, se alega en la demanda "que al terminarse la citada feria-exposición, el demandante requirió a la demandada para que le pagase la citada cantidad, *y no obstante reconocer la demandada al demandante adeudarle la citada suma de $2,208.46,* la citada demandada no ha pagado al demandante . . . ." (Bastardillas nuestras.) Una alegación como la que precede es todo cuanto requiere el caso de *E. Rubio e Hijos* v. *Carrasco,* invocado, que se haga en demandas basadas en una cuenta liquidada (*account stated*).

". . . Y si la demanda, . . . se basaba en varias cuentas liquidadas (*accounts stated*), entonces no debió haberse limitado la demandante a alegar que se había practicado una liquidación de la cuenta del demandado. . . sino que debió haber alegado además que la cuenta se rindió al demandado *y éste en alguna de las formas reconocidas en derecho mostró su conformidad con el balance.*" (Bastardillas nuestras.) *E. Rubio e Hijos* v. *Carrasco,* supra.

Lo esencial es alegar el reconocimiento, aprobación o conformidad con el balance, pues de ese reconocimiento, aprobación o conformidad con el balance o cuenta es que surge una nueva e independiente causa de acción, en que ha de basarse la demanda.

"Y si ése era el caso no había que probar las partidas de la cuenta porque surgía una nueva causa de acción basada en el convenio. Dice R. C. L., resumiendo la jurisprudencia:

" 'Del convenio surge una nueva e independiente causa de acción y, por tanto, se establece una obligación legal irrespectivamente de las partidas o constituyente del fundamento de responsabilidad anterior. El saldo especificado es una deuda líquida, tan obligatoria como si estuviese evidenciada por un pagaré, factura o fianza.' 1 R. C. L. 212." *Santiago* v. *Cuevas Padilla,* 41 D.P.R. 116.

En el caso de autos se alega que la demandada reconoció la deuda y en la promesa implícita de pagarla es que se basa la acción. Opinamos que la demanda aduce hechos suficientes.

■ El segundo error que se le imputa a la corte *a quo* consiste en que admitió al demandante prueba en apoyo de las alegaciones de la demanda a pesar de no haber suministrado en absoluto el pliego de particulares pedido por la demandada y ordenado por la corte. Se basa la demandada en el artículo 124 del Código de Enjuiciamiento Civil que dice textualmente así:

"En las alegaciones no es necesario que la parte que alegue la existencia de alguna cuenta, detalle las partidas de ésta, pero deberá entregar a la parte contraria, dentro de los diez días de haberla pedido por escrito, una copia de dicha cuenta, requisito sin el cual quedará imposibilitada de presentar prueba en apoyo de la misma. La corte o juez podrá disponer la presentación de otra cuenta además de la presentada, si ésta fuere demasiado general o resultare defectuosa en alguno de sus particulares."

Como la acción que se ejercita en este pleito tiene por objeto recobrar el balance no pagado de una cuenta liquidada (*stated account*), no cometió la corte inferior el error apuntado, de acuerdo con lo resuelto por este Tribunal en *Santiago* v. *Cuevas Padilla,* supra:

"No conforme el demandado apeló para ante este tribunal. Tres errores señala en su alegato. Insiste en el primero en que no habiéndole proporcionado el demandante el pliego de particulares que a tiempo le pidiera, no pudo presentar prueba sobre la cuenta en que basó su reclamación.

"El artículo 124 del Código de Enjuiciamiento Civil expresa:

" 'Artículo 124.—En las alegaciones no es necesario que la parte que alegue la existencia de alguna cuenta, detalle las partidas de ésta, pero deberá entregar a la parte contraria, dentro de los diez días de haberla pedido por escrito, una copia de dicha cuenta, requisito sin el cual quedará imposibilitada de presentar prueba en apoyo de la misma. La corte o juez podrá disponer la presentación de otra cuenta además de la presentada, si ésta fuere demasiado general o resultare defectuosa en alguno de sus particulares.'

"Si la reclamación del demandante se hubiera basado en una cuenta corriente, tendría entera razón el apelante, pero su reclamación se basó en *un saldo vencido, liquidado de conformidad con el demandado.*

"Siendo ello así, es necesario reconocer que se trataba de lo que en derecho americano se conoce como 'an account stated,' esto es:

" 'Una cuenta que ha sido rendida por una persona, a otra, conteniendo el saldo que se alega está en descubierto, saldo que ha sido aceptado y admitido que es una cuenta correcta de la deuda que representa.' 1 R. C.L. 207."

En el tercer señalamiento se imputa a la corte sentenciadora error al admitir como evidencia un "Estado de Pérdidas y Ganancias" de la "Feria Exposición de Puerto Rico."

En apoyo de las alegaciones de su demanda, ofreció en evidencia Cintrón, y fué admitido por la corte con la oposición y excepción de la demandada, un Estado de Pérdidas y Ganancias en que figura F. P. Cintrón en el "Pasivo Corriente" con un balance a su favor de $2,208.46. También ofreció y fué admitido sin oposición el libro mayor de la corporación demandada que contiene al folio 47 la siguiente cuenta:

"Francisco P. Cintrón, cta. caja 1934, Julio 4—C 6 $1,006.25, Julio 7, C 11 $3,214.71."

No nos detendremos a considerar este señalamiento de error porque aun suponiendo que se haya cometido, no causaría la revocación de la sentencia, según veremos. Además del Estado de Pérdidas y Ganancias, el demandante ofreció el libro mayor de la corporación. La demandada no hizo oposición a su admisión, a pesar de que a la página 47 aparecen dos entradas que, restada una de la otra, arrojan a favor del demandante, el balance que reclama en su demanda. Los libros de una corporación hacen, por lo menos, prueba prima facie contra ella, y en este caso las entradas en el mayor constituyen una admisión de la corporación demandada de que adeuda el balance reclamado.

"Considerando que una corporación habla prácticamente por medio de sus records, y es en realidad en ese respecto diferente a una persona natural que puede expresarse por medio de la palabra y por su conducta lo mismo que por escrito, resulta que los libros y records de una corporación son prueba prima facie en contra de ella, como admisiones; y bajo ciertas circunstancias, pueden constituir prueba concluyente." 2 Jones Commentaries on Evidence, pág. 497 (1913 ed.)

La demandada no hizo objeción a esta evidencia cuando fué ofrecida, y menos aún anotó una excepción al admitirla la corte inferior, quien pudo, dentro de su discreción, considerarla por sí sola suficiente reconocimiento de la deuda y de la cantidad debida. Y como la demandada no excepcionó esta evidencia al ser admitida, está ahora impedida de formular contra ella las objeciones que levanta en su alegato. De modo que, aunque fuera inadmisible el "Estado de Pérdidas y Ganancias," el error debe declararse sin lugar, ya que la corte tuvo ante sí prueba bastante en que basar su sentencia.

El cuarto señalamiento estriba en que la corte inferior no dedujo de los $2,208.46 a que condenó a pagar a la demandada, $500 que el demandante le adeuda en concepto de acciones que compró de la demandada, y $182.50 que el propio demandante confesó deberle por beneficios que obtuvo en conexión con la feria.

Examinemos antes lo relacionado con la partida de $500. En el libro mayor de la corporación figura un cargo contra Cintrón por $1,006.25, y un crédito a su favor montante a $3,214.71. La diferencia entre una y otra cantidad es el importe de la sentencia. A la demandada correspondía probar que los $500 importe de las acciones no están incluídos en la partida de $1,006.25, como es lógico esperar, si Cintrón debía dicha suma. Y si alguna cosa se desprende del récord es que están incluídos en dicha partida. Bernardo Cruz, Jr., contador de la demandada, declaró a preguntas que le hiciera el abogado de aquélla, como sigue:

"A. ¿Usted como tenedor de libros practicó alguna entrada acreditándole quinientos (500) pesos que debía de acciones el señor Cintrón?

"T. Cargándolo.

"A. ¿Y no los ha pagado?

"T. No, señor."

En esas condiciones, *i. e.* si los $500 estuvieran incluídos en la partida de $1,006.25 y ordenáramos ahora que se dedujeran del importe de la sentencia, resultaría el demandante pagando $1,000 en vez de $500, por las acciones. No hay base en el récord para que podamos llegar a otra conclusión.

En cuanto a los $182.50, la cuestión varía. Declaró Cintrón que, días antes de comenzar la feria, quedaban sin arrendar varios espacios de los que se destinaban a instalar picas, que afeaban y desairaban el espectáculo. Que entonces convino con los otros oficiales de la demandada en que él instalaría picas en dichos espacios, pondría al frente de ellas a su hermano, a quien daría el 50 por ciento de los beneficios, y el otro 50 por ciento quedaría para la corporación. Así se hizo en efecto, resultando un beneficio de $365, de los cuales entregó a su hermano $182.50 y se reservó igual suma "Para entregar a la corporación"; que no entregó nunca esos $182.50 porque no logró reunirse con sus asociados para hacerles la liquidación.

Resulta, pues, admitido por el propio demandante, que en su poder tenía $182.50 pertenecientes a la demandada, cantidad que no puede estar incluída en ninguna de las dos partidas que figuran en el libro mayor, porque nunca llegó a hacer una liquidación. En esas circunstancias, la corte inferior debió deducir de los $2,208.46, los $182.50.

El quinto error se refiere a una partida de $800 que la corte inferior no dedujo de los $2,208.46, importe de la sentencia. Se refiere la demandada a un pago por esa cantidad hecho a la casa San Miguel Hnos. en concepto de materiales de construcción. Con respecto a dicha partida, declaró Ber-

nardo Cruz, Jr., que como hemos dicho era el contador de la demandada, que esos $800 estaban incluídos en la reclamación de Cintrón, y que él se los abonó en los libros, como que los había gastado. Para demostrar que ese pago no se hizo con dinero de Cintrón, la demandada ofreció la declaración de José Muñoz, apoderado general en San Juan de la casa San Miguel Hnos., quien dijo haber recibido en pago de esos $800 y por cuenta de la feria, $300 en efectivo y un cheque por $500 de Fernando Caso, tesorero a la sazón de la demandada.

La declaración de José Muñoz no desvirtúa ni contradice la del contador Cruz. Caso pudo hacer personalmente el pago, y hasta en un cheque suyo, y sin embargo proceder el dinero de Cintrón, quien sostiene haberle hecho a la demandada diversos préstamos porque los fondos de que disponía ésta estaban agotados. La demandada no ha demostrado que esos $800 estuvieran indebidamente incluídos en la partida de $3,214.71 que aparece al folio 47 del libro mayor, y que representa la cantidad admitida por la demandada como deuda a favor del demandante.

El sexto señalamiento se dirige contra la condena a pagar costas y honorarios. Del estudio que hemos hecho del récord de ambos casos no resulta que la corporación demandada haya sido temeraria en grado tal que justifique la imposición de costas y honorarios.

Se dice en el octavo señalamiento que la corte inferior erró al declarar con lugar la reclamación de Cintrón por concepto de préstamos, habiéndose demostrado por la prueba que la corporación no tenía poderes ni facultades para tomar dinero a préstamo.

Los poderes o facultades de una corporación emanan de sus estatutos de incorporación, y esos poderes y esas facultades pueden ser expresos o implícitos. Son expresos los que específicamente constan de los estatutos de incorporación, e implícitos, no sólo los que son indispensables a la realización de los propósitos y fines para que fué creada, sino también

los que son apropiados, convenientes y necesarios a esos fines, 1 Cook on Corporations, pág. 11, párr. 3.

No puede negarse que la facultad de tomar dinero a préstamo le es a la corporación demandada no sólo necesaria sino indispensable a su desenvolvimiento normal. Y si ello es así, debemos llegar a la conclusión ineludible de que esa facultad reside implícitamente en ella, por lo que no existe el error apuntado.

[7] Examinemos ahora el único error señalado contra la sentencia en el caso núm. 7351. Dice así:

"La Corte cometió error manifiesto en la apreciación de la prueba aportada por la corporación Insular Industrial & Agricultural Exposition Association, Inc., en la demanda sobre cobro de dinero contra Cintrón, declarándola sin lugar a pesar de que las pruebas demostraron cumplidamente las alegaciones de la demanda de la corporación y al no compensar parcialmente la cantidad reclamada por Cintrón en su demanda con la cantidad que debió haber sido reconocida como deuda de Cintrón en el pleito seguídole por la corporación."

Hemos leído detenidamente la transcripción, y si bien es cierto que la prueba es contradictoria, no encontramos que la corte sentenciadora cometiera manifiesto error de apreciación. No se alega que actuara movida por la pasión o el prejuicio, y si tal cosa se alegara, ello no se desprende del récord. Debe, por tanto, respetarse su dictamen. *Marrero v. White Star Bus Line, Inc.*, 51 D.P.R. 41; *Bonilla v. Mitchel*, 51 D.P.R. 126.

Por las razones expuestas, *debe confirmarse la sentencia en el recurso núm. 7351, y modificarse la que fué dictada en el núm. 7352, deduciendo de su importe la cantidad de $182.50 y eliminando el pronunciamiento de costas, desembolsos y honorarios de abogado, y así modificada confirmarse.*

El Juez Asociado Señor Córdova Dávila no intervino.