ENRIQUE GUADALUPE GUADALUPE, por sí y PEDRO, ROSENDO, JUANA, EMILIANO, GREGORIO y ROMÁN GUADALUPE GUADALUPE, menores representados por su defensor judicial, CIRILO GUADALUPE, demandantes y apelados, *v.* JOAQUÍN L. RODRÍGUEZ y su esposa SOFÍA BERMÚDEZ, demandados y apelantes. LOS MISMOS, demandantes y apelantes, *v.* LOS MISMOS, demandados y apelados.

Núms. 9958 y 9778.—*Sometidos:* Noviembre 7, 1949. *Resueltos:* Marzo 9, 1950.

960

*R. Arjona Siaca* y *A. Figueroa Rivera,* abogados de los demandantes, apelados y apelantes; *Rafael A. Arroyo Ríos,* abogado de los demandados, apelantes y apelados.

El Juez Presidente Señor de Jesús emitió la opinión del tribunal.

En el año 1929 el aquí demandado Joaquín L. Rodríguez inició acción en la Corte de Distrito de Humacao contra Alejandrina Guadalupe Ortiz y sus menores hijos, los aquí demandantes, en cobro de la cantidad de $2,548.15. No habiendo comparecido los demandados en aquel caso, el secretario procedió a anotar la rebeldía y a dictar sentencia por la suma reclamada. Posteriormente la finca que se describe en la demanda fué vendida en pública subasta y adjudicada al entonces demandante Joaquín L. Rodríguez el 21 de abril de 1930 por la cantidad de $500 en pago parcial de la sentencia.

Más de diez años después de dictada la sentencia en rebeldía, allá para el 27 de noviembre de 1940, los aquí demandantes, como herederos de Román Guadalupe López(¹) y de Alejandrina Guadalupe Ortiz, radicaron contra Joaquín L. Rodríguez y su esposa esta acción impugnando la validez de dicha sentencia y solicitando la reivindicación de la finca antes mencionada, más los frutos producidos. La demanda fué enmendada el 24 de mayo de 1941. Alegaron dos causas de acción. En la primera expusieron que su padre era dueño de la referida finca; que son los únicos y universales herederos de Román Guadalupe López, de Alejandrina Guadalupe Ortiz y de un hermano de los demandantes que falleció sin sucesión antes de la radicación de la demanda; que sus padres nunca enajenaron la referida finca; tampoco su hermano fenecido dispuso de su participación en la herencia de sus padres; y que los demandantes jamás han dispuesto de la finca, la cual poseían los demandados sin título y contra la voluntad de aquéllos desde que les fuera adjudicada el 21 de abril de 1930. En la segunda reclamaron la cantidad de $9,000 por concepto de frutos producidos o debidos producir y concluyeron solicitando una sentencia que declarase con lugar la demanda y condenase a los demandados a restituirles la referida finca y a pagarles por concepto de frutos producidos la cantidad de $9,000, más las costas y $1,000 para honorarios de abogado.

Contestando la demanda enmendada,(²) los demandados negaron las alegaciones esenciales de la misma y como materia nueva alegaron que la finca les había sido adjudicada a virtud del pleito seguido en el año 1929; que unos meses antes de radicarse la contestación enmendada, el Gobierno de los Estados Unidos de América les había expropiado la referida finca, y desde entonces habían sido privados de su posesión. Alegaron como contrademanda: (a) que al adjudi-

---

(¹) Román Guadalupe López falleció el 22 de mayo de 1928.
(²) La contestación a la demanda enmendada se radicó el 2 de febrero de 1944.

dicárseles la finca, los herederos de Román Guadalupe López adeudaban a la corporación Benítez Sugar Company la suma de $637.44, la cual fué satisfecha por los contrademandantes, sin que en ningún momento la Sucesión de Román Guadalupe López se la reembolsara; (b) que los contrademandantes habían pagado al Tesoro de Puerto Rico la cantidad de $296 por concepto de contribuciones impuestas a la finca en controversia, la que tampoco le habían satisfecho los contrademandados; y (c) que los contrademandantes invirtieron en la finca la cantidad de $218 en cercas y otras mejoras. Terminaron suplicando que se declarase sin lugar la demanda en todas sus partes, con lugar la contrademanda, y que se condenase a los contrademandados a pagarles dichas cantidades, las que sumadas a los $2,048.15 que les adeudaban por concepto de la sentencia en rebeldía—después de deducidos los $500 en que se les adjudicó la finca—hacían un total de $3,199.59; y que para el caso de que la corte declarase con lugar la demanda y condenase a los demandados a pagar suma alguna a los demandantes, que dicha cantidad sea compensada por lo adeudado por los demandantes a los demandados por los conceptos expresados, condenándose entonces a los demandantes a pagar a los demandados la diferencia entre los respectivos créditos.

El caso fué a juicio y una vez terminada la prueba del demandante la corte desestimó la demanda a virtud de una moción de *nonsuit*, fundándose en que no procedía la acción reivindicatoria porque los demandados no se hallaban en posesión de la finca. Apelada esa sentencia, este Tribunal la revocó basándose en lo dispuesto en el .artículo 284 del Código de Enjuiciamiento Civil([3]) y devolvió el caso a la corte inferior para ulteriores procedimientos. *Guadalupe* v.

---

([3]) El artículo 284 del Código de Enjuiciamiento Civil prescribe:

"En un pleito para reivindicar propiedad real, si el demandante prueba que tenía derecho a la reivindicación al tiempo de interponer su demanda, pero resultare luego que su derecho se extinguió durante el curso del pleito, el veredicto y la sentencia deben ser acordes con los hechos y el demandante podrá obtener indemnización de perjuicios por la retención de la propiedad."

*Rodríguez*, 66 D.P.R. 143. Continuado el juicio en la corte inferior, el 29 de agosto de 1947 se dictó la sentencia que motiva este recurso, la cual anuló la dictada en rebeldía el 7 de enero de 1930 en el caso núm. 14,749 y consecuentemente declaró que la finca pertenecía a los demandantes; condenó a los demandados a satisfacer a los demandantes la cantidad de $425.28 [debió ser $425.29] que es la diferencia entre lo recibido por los demandados por concepto de la expropiación más los frutos producidos, partidas que suman $3,269.44, (⁴) y la cantidad de $2,844.15 que los demandantes adeudaban a los demandados, según declaró la corte, más las costas y $250 para honorarios de abogado.

Las dos partes apelaron. Determinaremos en primer término, si la Sentencia dictada en el caso núm. 14,749 es nula. Dos fueron los motivos que expuso la corte inferior para anularla: (*a*) que los demandados en dicha acción civil núm. 14,749 no fueron debidamente emplazados de acuerdo con la ley; y (*b*) que el secretario no tenía facultades de acuerdo con el artículo 194 del Código de Enjuiciamiento Civil, para dictar la sentencia en rebeldía por no tratarse de una cuenta liquidada.

## I

Sostuvo la corte a quo que el emplazamiento era nulo porque la persona que lo diligenció no juró que había entregado a cada uno de los demandados una copia de la demanda. El diligenciamiento, en lo pertinente, dice: ". . . entregando a dichos demandados y dejando en su poder personalmente en su casa, barrio Palma, Vieques, una copia de dicho emplazamiento y en poder del demandado una copia de la demanda mencionada en dicho emplazamiento. . ."

Es un hecho fuera de controversia que los demandados

---

(⁴) Lo recibido por concepto de la expropiación ascendió a $1,562.39 después de deducidas las contribuciones adeudadas por la finca. La cantidad de $1,707.05 que completa los $3,269.44 está integrada por los frutos percibidos y el valor de una pequeña casa que destruyeron los demandados tasada en $20.

964

vivían todos en Vieques, dentro del Distrito Judicial de Humacao donde se tramitó el pleito núm. 14,749. Siendo ello así, es de aplicación el artículo 92 del Código de Enjuiciamiento Civil, ed. 1933, (⁴ᵃ) que en lo pertinente, dice:

". . . La citación irá acompañada de una copia de la demanda a menos que dos o más de los demandados residieren en el mismo distrito, *en cuyo caso sólo será necesario entregar una copia de la demanda a uno de los demandados.*" (Bastardillas nuestras.)

Podría argüirse que algunos o quizás todos los hijos de Alejandrina Guadalupe Ortiz eran menores de catorce años(⁵) y que de conformidad con el inciso 3 del artículo 93 del Código de Enjuiciamiento Civil, (⁶) era necesario que se entregase una copia de la citación a cada menor personalmente, así como también a su madre con patria potestad. Pero como ésta había sido demandada en el mismo pleito y fué citada al mismo tiempo que los menores, no precisaba que se le notificara con las copias del emplazamiento que se habían entregado a cada menor, pues ella tenía la que le correspondía como demandada y de ese modo, había quedado enterada del pleito seguido contra ella y sus menores hijos. *Brown* v. *Lawson*, 51 Cal. 615 (1877) y *Pacific Coast Joint Stock Land Bank* v. *Clausen*, 65 P.2d 352 (Cal., 1937).

Erró, pues, la corte inferior, al declarar nulo el emplazamiento. Pasemos ahora a considerar la validez de la sentencia en rebeldía.

---

(⁴ᵃ) No son de aplicación las Reglas de Enjuiciamiento Civil porque el pleito núm. 14,749 se terminó en 1930.

(⁵) De los siete menores uno era póstumo.

(⁶) El inciso 3 del artículo 93 del Código de Enjuiciamiento Civil prescribe:

"La citación se hará mediante entrega de una copia de la misma, como sigue:

".        .        .        .        .        .        .

"3. Si fuese contra un menor de catorce años que residiere en la Isla, a dicho menor personalmente, así como también a su padre, madre o tutor; y si ninguno de éstos se encontrare en la Isla, entonces a cualesquiera de las personas que tuvieren a su cargo o cuidado dicho menor, o con quien viviere o en cuyo servicio estuviere empleado."

## II

La suma reclamada en el pleito núm. 14,749 se componía de dos partidas: Una por $1,498.48 procedente de mercancía y provisiones suministradas a Román Guadalupe López; y la otra por $1,049.67 por concepto de efectos similares suministrados a Alejandrina Guadalupe Ortiz y sus hijos con posterioridad al fallecimiento de su esposo. La primera partida fué aceptada como correcta por la madre de los menores en la escritura que ella y sus hijos y el defensor judicial de estos últimos, otorgaron ante el notario Pedro Pérez Pimentel el 16 de julio de 1929 sobre inventario y avalúo de los bienes relictos por dicho causante. No hay duda de que esa partida era líquida y exigible a virtud de la aceptación contenida en la referida escritura y que la madre podía legalmente hacer dicha aceptación en representación de sus hijos, sin previa autorización judicial. *Fonseca* v. *Molina*, 39 D.P.R. 581.

Es verdad que en el presente caso la deuda que aceptó la madre de los menores fué contraída por el padre, Román Guadalupe López, mientras que en el de *Fonseca*, supra, los efectos habían sido tomados directamente por la madre; pero teniendo en cuenta la naturaleza de la mercancía vendida a Román Guadalupe López—diarios y provisiones para la casa—fácil es comprender que la esposa estaba quizás en mejores condiciones que su marido para determinar si efectivamente esa mercancía le había sido servida. Y el hecho de que el nombramiento de defensor judicial pudiera ser nulo, no afecta la aceptación de la cuenta, pues dicho acto se verificó por la madre.

En cuanto a la partida de $1,049.67 que fué sumada a la anterior y dió un total de $2,548.15, se alegó en el párrafo tercero de la demanda radicada en el caso núm. 14,749 lo siguiente:

"Después de la muerte del Sr. Román Guadalupe López, el demandante ha despachado de su establecimiento de Vieques, provisiones, mercancías y dinero, para las necesidades de ali-

mentación, vestidos y demás gastos indispensables a los demandados, por valor de $1,049.67, tomados a crédito por los demandados al demandante; cuya suma unida a la anteriormente alegada, integra la cantidad de $2,548.15, que los demandados están adeudando actualmente al demandante, *siendo dicha suma en la actualidad líquida y exigible."* (Bastardillas nuestras.)

Arguyen los demandantes en el presente caso que la manifestación al efecto de que la cantidad reclamada era líquida y exigible, es una mera conclusión de derecho, por lo que debe considerarse como no alegada. En consecuencia, sostienen que el secretario no podía registrar sentencia de conformidad con el artículo 194 del Código de Enjuiciamiento Civil, ed. 1933.

Nos damos cuenta de que a veces es difícil distinguir entre una conclusión de derecho y una de hecho *(ultimate fact)* pues frecuentemente la misma alegación constituye una conclusión de derecho y de hecho, o como en este caso, una alegación mixta de hecho y de derecho. Véase, por analogía, lo que sobre la alegación de "negligencia" como alegación mixta de hecho y de derecho, dice Wheaton, *Manner of Stating Cause of Action*, 20 Cornell L. Q. 185, 203 (1935). En tales casos, la alegación es correcta como conclusión de hecho, pues son estas últimas las que deben exponerse en las alegaciones y no los hechos probatorios mediante los cuales se establecerán en el juicio las conclusiones de hecho.[6a] El vocablo "líquida" en relación con una cuenta, en lenguaje corriente significa el saldo "o residuo de cuantía cierta que resulta de la comparación del cargo con la data". Y la voz "exigible" refiriéndose a una obligación, significa que puede demandarse su cumplimiento. Por consiguiente, al alegarse que la cuenta es "líquida y exigible" se están exponiendo hechos, a saber: que el residuo de la cuenta ha sido aceptado como correcto por el deudor y que está vencido. *Heinrick and others, Partners, etc.* v. *Englund*, 26 N. W. 122 (Minn.,

---

[6a] Por supuesto, la parte contraria, si así lo solicita, tiene derecho a conocer los hechos que sirven de base a la alegada conclusión de hecho.

1885) ; *Nelson* v. *Zahn Grain Co.*, 127 P.2d 803 (Okl., 1942) ; *Gasper* v. *Mayer*, 43 P.2d 467 (Okl., 1935). Concedemos que en la demanda no se alegó expresamente que la liquidación había sido hecha por ambas partes, acreedor y deudor; pero esa especificación no era indispensable, pues para que haya una liquidación desde el punto de vista legal, precisa que la misma se haya verificado por las dos partes de conformidad, o por una de ellas con la aceptación expresa o implícita de la otra. Y así debemos interpretar la alegación mientras del contexto de la misma o de la evidencia no se demuestre lo contrario, pues como prescribe el artículo 122 del Código de Enjuiciamiento Civil, "al considerar una alegación para determinar sus efectos, deberá interpretarse con liberalidad, a fin de asegurar absoluta justicia entre las partes". Véase, por vía de ilustración, la Regla 8 ($f$) de Enjuiciamiento Civil. De igual modo, cuando se alega que $X$ es insolvente, lo que se indica es que su activo es insuficiente para cubrir su pasivo. *Congress Cigar Co., Inc.* v. *Grau*, 44 D.P.R. 649; *Scott* v. *Cismadi*, 74 N.E.2d 563 (Ohio, 1947) ; *Oliver* v. *Coffman*, 45 N.E.2d 351 (Ind., 1942) ; *Ching Yau* v. *Rapozo*, 30 Haw. 24 (1927) ; *Chittenden & Eastman Co.* v. *Leader Furniture Co.*, 201 Pac. 843 (Ariz., 1921) y *Merritt* v. *Meisenheimer*, 146 Pac. 370 (Wash., 1915). En el caso de *Congress Cigar Co., Inc.* v. *Grau*, supra, se dijo lo siguiente:

"En el caso de *City of Indianapolis* v. *Mitchell*, 61 N.E. 947, resuelto por la Corte Suprema de Indiana, se consideró suficiente la alegación de que el deudor era insolvente, sin acompañarla de la acostumbrada alegación de que dicho deudor no tiene ni tenía propiedad sujeta a ejecución. En este caso la corte dijo:

" 'Se alega además que Fred Lammert era insolvente después del traspaso y cuando se inició la acción. Se ha sostenido desde hace mucho tiempo que una alegación al efecto de que el deudor no tuvo al tiempo del traspaso ni ha tenido desde entonces propiedad suficiente sujeta a ejecución para pagar sus deudas o cualquier parte de las mismas, constituye una suficiente alegación de insolvencia. La insolvencia es el hecho

fundamental en controversia y la ausencia de propiedad sujeta a ejecución demuestra la existencia de tal condición. La alegación de que el deudor era completamente insolvente es, por lo tanto, suficiente, sin el aditamento usual de que él no tiene ni tenía propiedad sujeta a ejecución. Si hubiese alguna duda respecto al establecimiento de este principio, quedaría disipada citando un número de casos análogos. La alegación de que el firmante de un pagaré era completamente insolvente ha sido siempre reconocida como una afirmación de un hecho en acciones contra los endosantes. Es una regla firmemente establecida que una alegación al efecto de que el deudor no tenía y no tiene propiedad sujeta a ejecución es bastante en acciones para anular traspasos fraudulentos. La insolvencia puede alegarse en esta forma o expresamente, como se ha dicho aquí.' (⁷)

"En el caso de *Grunsfeld Bros.* v. *Brownell,* 76 Pac. 310, la Corte Suprema de Nuevo Méjico se expresó así:

" 'El hecho octavo de la demanda alega que el demandado D. R. Brownell es insolvente, y nos parece a nosotros, que esto es una alegación de que Brownell no tenía propiedad bastante para pagar sus deudas. La palabra insolvencia, según se usa en las leyes de quiebra e insolvencia, significa la inhabilidad de una persona para pagar sus deudas cuando vencen en el curso ordinario de los negocios; pero en su sentido general significa un exceso sustancial de responsabilidades personales sobre el valor efectivo de su propiedad.' " (Págs. 654, 655.)

Somos de opinión que el secretario tuvo ante sí la alegación de una cuenta liquidada y consecuentemente pudo dictar la sentencia en rebeldía. (⁸) Los casos de *Rivera* v. *Corte,* 44 D.P.R. 817 y *De León* v. *Pérez,* 54 D.P.R. 215, en los que se resolvió que eran nulas las respectivas sentencias dictadas en rebeldía por el secretario, no son aplicables, pues en ninguno de ellos existe alegación alguna al efecto de que las cuentas reclamadas hubieran sido liquidadas.

---

(⁷) El caso del cual se hace esta cita no debe ser el de *City of Indianapolis* v. *Mitchell,* 61 N.E. 947, sino el de *Lammert* v. *Stockings,* 61 N.E. 945, 946.

(⁸) Véase la forma número 286 para una demanda de cuenta liquidada que aparece en 2 Bancroft's *Code Pleading With Forms,* pág. 1122, en relación con la sección 780 de dicha obra, volumen 2, pág. 1106.

Es verdad que en el caso de *E. Rubio e Hijos* v. *Carrasco*, 26 D.P.R. 255, se dijo:

". . . Y si la demanda, como parece que fué la intención de la demandante, se basaba en varias cuentas liquidadas (*accounts stated*), entonces no debió haberse limitado la demandante a alegar que se había practicado una liquidación de la cuenta del demandado en cada caso resultando un balance a favor de la demandante y en contra del demandado por determinada suma, sino que debió haber alegado además que la cuenta se rindió al demandado y éste en alguna de las formas reconocidas en derecho mostró su conformidad con el balance. Véase el tomo primero, páginas 204 a 225 de la obra de derecho Ruling Case Law, que trata con claridad y concisión sobre esta materia." (Pág. 257.)

Pero la exposición que del derecho se hace no es exacta. Contrario a lo que se dice en dicho caso, al alegarse "que se había practicado una liquidación de la cuenta del demandado en cada caso resultando un balance a favor del demandante y en contra del demandado, por determinada suma", se hizo, como hemos visto, una alegación correcta; y el hecho de que no se siguiera la forma acostumbrada de alegar expresamente la conformidad del demandado, no indica que la alegación que se hizo en el citado caso de *Rubio*, supra, fuera incorrecta. La cita de 1 R.C.L. págs. 204 a 225 es errónea, pues dicha obra no sostiene lo que se dice en el párrafo transcrito. Lo que dice sobre esta materia es una mera exposición de derecho sustantivo al efecto de que para que una cuenta se entienda liquidada (*account stated*) es necesario que el demandado haya aceptado el balance que se alega liquidado, pero no dice que sea indispensable la alegación expresa de que la cuenta se rindió al demandado y que éste mostró su conformidad con el balance. En consecuencia, el lenguaje del caso de *E. Rubio e Hijos* v. *Carrasco*, supra, debe entenderse aclarado en cuanto a este punto.

Siendo válida la sentencia en rebeldía por la cual los aquí demandantes y Alejandrina Guadalupe fueron conde-

nados a pagar al aquí demandado Joaquín L. Rodríguez la cantidad de $2,548.15, procederemos ahora a considerar las reclamaciones de la contrademanda.

## III

Como la finca en cuestión fué adjudicada al entonces demandante, ahora contrademandante, por la cantidad de $500 para ser abonada a la sentencia por $2,548.15, una simple operación aritmética demostrará que se le adeudan $2,048.15 por concepto de la sentencia. Y esa deuda no estaba prescrita, como pretenden los contrademandados, pues la sentencia se dictó el 7 de enero de 1930 y la contrademanda se radicó el 2 de febrero de 1944, no habiendo, por tanto, transcurrido el término prescriptivo de quince años que fija el artículo 1864 del Código Civil para el ejercicio de las acciones personales que no tengan señalado término especial de prescripción. *Valiente* v. *Buxó*, 68 D.P.R. 132. Sin embargo, no tienen derecho los contrademandantes a recobrar la cantidad de $637.44 porque no probaron, conforme declaró la corte a quo, que la Sucesión de Román Guadalupe López estuviera adeudando a Benítez Sugar Co. la referida suma. Es obvio que los $296 pagados por los contrademandantes por concepto de contribuciones y los $218 reclamados por cercas y otras mejoras, no pueden ser recobrados por ellos, ya que hemos llegado a la conclusión de que los contrademandantes eran los dueños de la referida finca en beneficio de la cual se hicieron esos desembolsos.

*Procede, por lo expuesto, revocar la sentencia y dictar otra declarando sin lugar la demanda, con lugar la contrademanda y condenando solidariamente a los contrademandados a pagar a los contrademandantes la cantidad de $2,048.15, balance adeudado de la sentencia recaída en el caso núm. 14,749, con intereses a razón de seis por ciento*

*anual desde el 2 de febrero de 1944, fecha en que se radicó
la contrademanda,* (⁹) *más las costas.*

Opinión disidente del Juez Asociado Señor Todd, Jr.

Disiento. Considero que la sentencia en rebeldía dictada
por el secretario en el caso núm. 14,749 es nula por no haber
tenido autoridad para dictarla, bajo el inciso primero del
artículo 194 del Código de Enjuiciamiento Civil. Considero,
además, que el caso de *E. Rubio e Hijos* v. *Carrasco,* 26
D.P.R. 255 fué bien resuelto y no debe ser revocado. Dicho
caso, al igual que muchos otros resueltos por este Tribunal,
no hizo otra cosa que consagrar localmente la regla sobre
una cuenta liquidada *(account stated)* del derecho ameri-
cano, la cual establece una nueva causa de acción basada en
un contrato entre las partes al liquidar, de conformidad,
cuentas pendientes entre ellas. La acción se basa en el
convenio entre las partes al hacer la liquidación. Como diji-
mos en *Lange* v. *Honoré,* 51 D.P.R. 711, 717: "El principio
de una cuenta liquidada depende generalmente de un con-
venio entre las partes al efecto de que determinada cuenta
es correcta. Este convenio puede ser expreso o inferirse de
la falta del deudor de levantar una objeción dentro de un
tiempo razonable después de presentársele la cuenta por el
acreedor, o, quizás, por otros actos del deudor. Es esencial-
mente un nuevo contrato que no es atacable en sus términos,
a no ser debido a fraude o error."

Es por esto que, no sólo en el caso de *E. Rubio e Hijos*
v. *Carrasco,* supra, sino que en el de *Insular Industrial, etc.
Ass'n.* v. *Cintrón,* 52 D.P.R. 631, 635, sostuvimos que en una
acción basada en una cuenta liquidada "Lo esencial es alegar
el reconocimiento, aprobación o conformidad con el balance,
pues de ese reconocimiento, aprobación o conformidad con
el balance o cuenta es que surge una nueva e independiente
causa de acción, en que ha de basarse la demanda."

---

(⁹) En la contrademanda no se reclamaron intereses sobre esta suma
desde el 7 de enero de 1930. Por consiguiente, deben computarse a par-
tir de la fecha de la radicación de la contrademanda.

En dicho caso se alegó expresamente que la demandada reconoció la deuda y en la promesa implícita de pagarle se basó la acción. Al mismo efecto en el caso de *Cochran, Síndico* v. *Fernández*, 47 D.P.R. 704, 711, se sostuvo la validez de una sentencia en rebeldía, dictada por el secretario, diciéndose: "El registro de la sentencia en rebeldía se hizo sobre la base única de la segunda causa de acción, o sea la que se funda en la cuenta corriente *liquidada y rendida por el demandante y aceptada por la demandada*. Siendo ello así, se trata claramente de un pleito que nace de un contrato sobre pago de dinero, comprendido, por tanto, dentro del número primero del artículo 194 del Código de Enjuiciamiento Civil." (Bastardillas nuestras.)

Independientemente de que la cita de 1 Ruling Case Law que se hizo en el caso de *Rubio* v. *Carrasco*, supra, no sostenga expresamente lo que se dice en la opinión, la jurisprudencia sostiene la conclusión a que en ella se llegó. Al efecto en *Mortensen* v. *Dayton Sand & Gravel Co.*, 22 P.2d 320 (Ore., 1933) se ratifica la regla expuesta desde el año 1894 en *Foste* v. *Standard Life & Acc. Ins. Co.*, 38 Pac. 617, de que: "Las alegaciones materiales en una acción sobre cuenta liquidada son (1) que el demandante y el demandado realizaron una liquidación juntos; (2) que bajo tal liquidación el demandado le debe una suma específica al demandante, (3) que el demandado ha prometido pagar, (4) y no ha pagado." Cierto que se ha resuelto que en cuanto al tercer requisito si se alegan los demás hechos necesarios para que exista una cuenta liquidada, la promesa de pagar se sobrentiende del propio hecho de la liquidación convenida y aceptada por las partes. 1 Am. Jur. 284 sec. 29.

Decir en una demanda que se han tomado a crédito provisiones, mercancías y dinero por valor de $1,049.67, "siendo dicha suma en la actualidad líquida y exigible", no es alegar una causa de acción sobre una cuenta liquidada *(account stated)* sino una cuenta corriente que el demandante ha liquidado él solo. Que así lo entendió el secretario lo demuestra

que al dictar la sentencia en rebeldía en el caso núm. 14,749, condenó a los allí demandados (entre ellos ocho menores de edad) a pagar al demandante la suma total de $2,548.15 como "importe de la cuenta corriente reclamada en la demanda".

Se ha resuelto que una alegación que decía (en una contrademanda) que "el demandante el día 10 de diciembre de 1918 y antes de esa fecha, debía al demandado la suma de $595.58 a base de una cuenta liquidada", sólo constituía una conclusión legal. *Herr* v. *Kennedy*, 195 Pac. 530 (Arizona, 1921). ¿Qué diferencia hay entre esa alegación y la contenida en el caso que comentamos? Ninguna, a mi juicio. Al mismo efecto véanse *Mercantile Trust Co.* v. *Doe*, 146 Pac. 692 (Cal., 1914) y *Merritt* v. *Meisenheimer*, 146 Pac. 370 (Wash., 1915).

Como lo entendió el propio secretario de la corte al dictar la sentencia en rebeldía, las alegaciones de la demanda lo que establecían era una acción en cobro de una cuenta corriente originada, en parte, por la Sucesión de Román Guadalupe López y en parte, por su causante. Aceptando que la madre pudiera reconocer la deuda contraída por su esposo en cuanto a ella la afectaba, creo que el caso de *Fonseca* v. *Molina*, 39 D.P.R. 581 citado en la opinión de la Corte, no es autoridad para sostener que ella pudiera reconocer dicha deuda en cuanto afectaba a sus hijos menores de edad, ya que en dicho caso se trataba de una deuda contraída por la propia madre para beneficio propio y el de sus hijos. En el caso de autos, la madre, alegando que existían intereses opuestos entre ella y sus hijos menores, solicitó de la corte el nombramiento de un defensor judicial para ellos. Alegó además que no existían abuelos paternos o maternos y se nombró a un particular. Esto no obstante, se probó que la abuela materna vivía cuando se hizo el nombramiento de defensor judicial, correspondiéndole a ella dicho nombramiento. Artículos 160 y 178 del Código Civil, ed. 1930. De

974

manera que la aceptación de la deuda que pudo haber hecho el defensor judicial nombrado tampoco podía obligar a los hijos menores de edad.

En cuanto a los casos citados en la opinión de la Corte en relación con la palabra "insolvente" usada en una demanda, la situación legal es muy distinta al caso de autos. La palabra "insolvente" no conlleva implicación de relación contractual de clase alguna como sucede con la frase "cuenta liquidada" *(account stated)*. Alegar que una persona es insolvente es exponer un hecho último *(ultimate fact)*. Alegar que una deuda es líquida y exigible es exponer una conclusión legal, porque si no ha sido liquidada de conformidad entre las partes y aceptada, no existe tal cuenta liquidada *(account stated)* y, por tanto, no ha surgido contrato alguno entre las partes que pueda justificar que el secretario, actuando ministerialmente, pudiera dictar sentencia en rebeldía bajo el artículo 194, supra. *Congress Cigar Co., Inc.* v. *Grau,* 44 D.P.R. 649; *Benítez* v. *Corte de Distrito,* 36 D.P.R. 450. El hecho de que la demanda adujera una causa de acción sobre el cobro de una cuenta corriente no justificaba que el secretario dictara sentencia en rebeldía. *Rivera* v. *Corte,* 44 D.P.R. 817; *De León* v. *Pérez,* 54 D.P.R. 215.

El caso de *Ching Yau* v. *Rapozo,* 30 Haw. 24, fué uno en que se dictó sentencia por la corte después de celebrado un juicio en sus méritos. Además, la demanda contenía alegaciones adicionales, tales como la fecha en que la cuenta se liquidó. No estaba envuelta cuestión alguna de una sentencia en rebeldía dictada por un secretario en un caso en que había demandados menores de edad como en el presente.

A mi juicio la sentencia debe ser confirmada.

EN MOCION DE RECONSIDERACION.

ABRIL 26, 1950

El Juez Presidente Señor De Jesús emitió la opinión del tribunal.

Los apelantes solicitan la reconsideración de la sentencia dictada en el presente caso. Señalan dos supuestos errores, que en realidad se reducen a uno, a saber: Que la corte inferior no adquirió jurisdicción sobre los demandados en el pleito civil núm. 14,749 porque no se probó que a cada uno de ellos, y a su señora madre, se le hubiera entregado una copia del emplazamiento.

La controversia en este caso gira en torno a la interpretación que deba darse a la declaración jurada acreditando que se practicó el emplazamiento. Dicha declaración, en lo pertinente, dice:

". . . notifiqué el mismo personalmente a Alejandrina Guadalupe Ortiz, Román, Pedro, Emiliano, Gregorio, Rosendo, Juana, Nepomuceno, Wenceslao y Enrique Guadalupe o sean los demandados mencionados en dichos emplazamientos dejando, digo, entregando a dichos demandados y dejando en su poder personalmente en su casa, Barrio Palma, Vieques, una copia de dicho emplazamiento y en poder del demandado una copia de la demanda mencionada en dicho emplazamiento, . . ."

· Si interpretamos aisladamente la frase "entregando a dichos demandados y dejando en su poder personalmente en su casa, barrio Palma, Vieques, una copia de dicho emplazamiento", podría surgir la duda de si en efecto una copia del emplazamiento fué entregada a cada uno de los demandados; pero si consideramos el diligenciamiento en su totalidad, nota-

remos que cuando se refiere a la entrega del emplazamiento, el diligenciante usa el plural, es decir, ''entregando á dichos demandados'', mientras que cuando se refiere a la entrega de la copia de la demanda, usa el singular. Quizás podría prestarse a distinta interpretación si el diligenciante hubiera dicho ''entregando a dichos demandados y dejando en su poder personalmente en su casa barrio Palma, Vieques, una copia de dicho emplazamiento y una copia de la demanda''. Pero como hemos indicado, el diligenciante tuvo el cuidado de usar el plural cuando se refirió a las personas a quienes entregó copia del emplazamiento y el singular cuando se refirió a la entrega de la copia de la demanda. De este modo indicó que entregó a cada demandado una copia del emplazamiento y una sola copia de la demanda para todos los demandados.

El caso de *García León* v. *Sucn. Dávila,* 45 D.P.R. 165, resuelto en 1933, cuando las cuestiones procesales todavía se interpretaban muy restrictamente, a distinción de la interpretación liberal que ahora se les da con el propósito de hacer justicia sustancial, no es de aplicación. Si examinamos el certificado de diligenciamiento que hizo el márshal en el caso de *García León,* supra, observaremos que tanto en lo que respecta a la entrega del emplazamiento como a la de la demanda, usa el mismo lenguaje, es decir, que entregó a los demandados ''una copia de dicho emplazamiento y en poder de los demandados mencionados una copia fiel y exacta de la demanda'', demostrando así que se siguió el mismo procedimiento, tanto en lo que respecta a la entrega de la copia del emplazamiento, como a la de la copia de la demanda. Además, en aquel caso se trataba de un pleito originado en una corte municipal, cuya jurisdicción, por no ser corte de récord, no se presume. Por eso este Tribunal, al final de su opinión en dicho caso se expresó así:

''Aún si el significado fuera ambiguo o dudoso, la duda debe resolverse contra los apelantes. Lo que el diligenciamiento decía era de todo punto consistente con un estado de hechos en que el márshal

977

solamente hubiera entregado una copia, y la jurisdicción *de una corte inferior no de récord,* debe aparecer positivamente.'' (Bastardillas nuestras.).

Podríamos agregar que en el caso de *García León,* supra, el diligenciamiento fué practicado por el márshal, persona que se supone versada, por razón de su cargo, en la redacción de un certificado de diligenciamiento, mientras que en el que nos ocupa, la constancia del diligenciamiento fué redactada por una persona particular.

A falta de una prueba afirmativa, que no la hay en este caso, pues los ahora demandantes no intentaron en ningún momento probar que no fueron emplazados, debemos concluir, tratándose de una corte de récord de jurisdicción general, que la presunción de jurisdicción[1] subsiste y en consecuencia, que es válido el emplazamiento. *Condon* v. *Associated Hospital Service,* 40 N.E.2d 230 (N. Y., 1942) y *Wilson* v. *Duncan,* 110 P. 2d 596 (Okl., 1941); 1 Freeman *on Judgments,* (5ta. ed., 1925) sección 383, pág. 817 *et seq.*

*Procede, por lo expuesto, denegar la reconsideración solicitada.*

El Juez Asociado Sr. Todd, Jr. está conforme con esta resolución pero sigue disintiendo en cuanto a la opinión principal.

---

[1] Aparte de esta presunción, parece conveniente consignar que resulta de los autos que en la fecha en que se celebró el juicio, la persona que diligenció el emplazamiento había fallecido.