Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>**LA SUCESIÓN DE CARMEN DELIA MELÉNDEZ ALICEA COMPUESTA POR WANDA IVELISSE GÓMEZ MELÉNDEZ Y ROBERTO LEVIS MELÉNDEZ**; FULANO Y FULANA DE TAL COMO POSIBLES HEREDEROS DESCONOCIDOS DE LA SUCESIÓN; CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES (CRIM)<br><br>Apelantes | KLAN202400073 | Recurso de *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.<br>CA2022CV02208<br><br>Sobre:<br>Cobro de Dinero y Ejecución de Hipoteca (Vía Ordinaria) |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Marrero Guerrero, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de marzo de 2024.

Comparece la Sucesión de Carmen Delia Meléndez Alicea (señora Meléndez Alicea o causante) compuesta por Wanda Ivelisse Gómez Meléndez (señora Gómez Meléndez) y Roberto Levis Meléndez (señor Levis Meléndez) (la parte apelante), y solicita que revoquemos la *Sentencia Parcial* emitida el 13 de diciembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI), notificada y archivada en autos el 15 de diciembre de 2023. [1] Mediante el referido dictamen, el foro primario declaró con lugar la solicitud del Banco Popular de Puerto Rico (parte apelada o Banco Popular) para desestimar la reconvención presentada por la parte apelante, originalmente por la causante el 11 de enero de 2023, y por la Sucesión

---

[1] Apéndice de la *Apelación*, Anejo XLI, págs. 149-153.

Número Identificador
SEN2024_____

de la señora Meléndez Alicea el 3 de octubre de 2023.[2] Además, el 14 de diciembre de 2023, el foro primario emitió una *Relación del Caso, Declaración de Hechos Probados, Conclusiones de Derecho y Sentencia Sumaria*, notificada y archivada el 15 de diciembre de 2023, por la cual declaró con lugar la *Demanda* del caso de epígrafe y, por ende, condenó a la parte apelante, en parte, a pagarle a la parte apelada una suma de:

> **$66,380.46** por concepto de principal, desde el **1ro de febrero de 2022**, más intereses al tipo pactado de **4.00%** anual que continúan acumulándose hasta el pago total de la obligación. Además, **[l]a Sucesión de Carmen Delia Meléndez Alicea** adeuda a la parte demandante los cargos por demora equivalentes a **4.00%** de la suma de aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha de vencimiento; los créditos accesorios y adelantos hechos en virtud de la escritura de hipoteca; y las costas, gastos y honorarios de abogado equivalentes a **$8,742.30**. Además[,] **[l]a Sucesión de Carmen Delia Meléndez Alicea** se comprometió a pagar una suma equivalente a **$8,742.30** para cubrir cualquier otro adelanto que se haga en virtud de la escritura de hipoteca y una suma equivalente a **$8,742.30** para cubrir intereses en adición a los garantizados por ley.[3]

Por las razones que expondremos a continuación, modificamos la *Sentencia* solamente a los efectos de revocar la imposición del pago de "una suma equivalente a **$8,742.30** para cubrir cualquier otro adelanto que se haga en virtud de la escritura de hipoteca y una suma equivalente a **$8,742.30** para cubrir intereses en adición a los garantizados por ley".[4] Veamos el tracto procesal y las normas jurídicas que sostienen nuestra determinación.

-I-

El caso ante nuestra consideración tiene su génesis el 11 de julio de 2022 cuando el Banco Popular presentó una *Demanda* en cobro de dinero y ejecución de hipoteca mediante la vía ordinaria en contra de la señora Meléndez Alicea.[5] En la misma adujo que, el 24 de noviembre de 2010, la señora Meléndez Alicea suscribió un pagaré a favor de

---

[2] *Íd.,* Anejo VII, págs. 51-57; *Íd.,* Anejo XXXIII, págs. 111-117.
[3] *Íd.,* Anejo XLII, págs. 154-165. (Énfasis en el original).
[4] *Íd.,* pág. 164.
[5] *Íd.,* Anejo I, págs. 1-4.

Doral Mortgage, LLC, o a su orden, por la suma de $87,423.00 más intereses al 4.00% anual y demás créditos litigiosos. Según arguyó la parte apelada, ese pagaré es evidencia del contrato de préstamo suscrito entre las partes, y está garantizado por la agencia federal FHA/HUD bajo el número 501-8148113-703. Además, la parte apelada esgrimió en la *Demanda* que la señora Meléndez Alicea también otorgó una escritura de hipoteca sobre una propiedad inmueble allí descrita. No obstante, según las alegaciones del Banco Popular, desde el 1ro de febrero de 2022 la señora Meléndez Alicea no realizó los pagos mensuales pactados por medio del pagaré y de la escritura de hipoteca. Por ello, alegó la parte apelada que la señora Meléndez Alicea le adeuda una suma equivalente a $66,380.46 en concepto de principal desde esa misma fecha; intereses pactados de 4.00% al año, los cuales continúan acumulándose hasta el pago total de la obligación; cargos por demora equivalentes al 4.00% de la suma de los pagos atrasados en exceso de 15 días calendarios de la fecha de vencimiento; una cantidad de $8,742.30 por razón de costas, gastos y honorarios de abogados; **$8,742.30 para cubrir <u>cualquier adelanto que se haga</u> en virtud de la escritura de hipoteca**; **y $8,742.30 por concepto de intereses <u>adicionales</u> a los garantizados por ley.** Por lo tanto, solicitó la venta en pública subasta de la propiedad estipulada como garantía.

El 20 de julio de 2022, el Banco Popular presentó una *Moción Sometiendo Documentos*, junto la que acompañó un pagaré original, una *Certificación y Declaración Jurada* acreditativa de la deuda, un estudio de título juramentado, una certificación registral de la finca número 11,820, una certificación del Departamento de la Defensa, y una escritura de hipoteca.[6]

---

[6] *Íd.*, Anejo II, págs. 5-35.

Luego de varios trámites procesales, el 11 de enero de 2023, la señora Meléndez Alicea presentó una *Contestación a la Demanda* con una *Reconvención*. En su *Contestación a la Demanda* alegó en lo pertinente que:

> Se niega que la deuda sea una vencida, y l[í]quida. La demandante no ha presentado evidencia sobre los alegados adelantos realizados ascendientes a $8,742.30, así como intereses autorizados en adición a los garantizados por ley, cualquier interés adicional debe catalogarse usura por parte de la demandante. Cualquier gasto no evidenciado tiene que ser descartado. . . .[7]

Posteriormente, el 20 de abril de 2023, la señora Meléndez Alicea, por conducto de su representante legal, presentó una *Moción Solicitando Sustitución de Parte Demandada* ante la muerte de la señora Meléndez Alicea.[8] Mediante esta, solicitó que la sustituyera su propia Sucesión compuesta por la señora Gómez Meléndez y el señor Levis Meléndez.

El 20 de abril de 2023, el foro *a quo* emitió una *Orden*, notificada y archivada en autos ese mismo día, por la que le concedió noventa (90) días a la parte apelante para enmendar la *Demanda* del caso de marras, y hacer la sustitución de la señora Meléndez Alicea, a tenor con la Regla 22 de Procedimiento Civil, 32 LPRA Ap. V., R. 22.[9]

Así las cosas, el 28 de abril de 2023, la parte apelada presentó una *Moción en Cumplimiento de Orden y Solicitando Sustitución de Parte, se Enmiende la Demanda a esos fines, Autorización para Emplazar por Edictos y Emplazamientos Personales.*[10]

El 29 de abril de 2023, el TPI emitió una *Orden*, notificada y archivada en autos el 1 de mayo de 2023, por la cual autorizó la presentación de la *Demanda Enmendada.*[11]

---

[7] *Íd.,* Anejo VII, págs. 51-57.
[8] *Íd.,* Anejo XXII, págs. 66-68.
[9] *Íd.,* Anejo XIII, pág. 69.
[10] *Íd.,* Anejo XVI, págs. 72-79. No se incluyeron en el Apéndice de la *Apelación* las páginas 2 y 4 de este escrito.
[11] *Íd.,* Anejo XVIII, págs. 83-86.

Luego de varios trámites procesales, el 3 de octubre de 2023, la parte apelante presentó una *Contestación a la Demanda* con una *Reconvención*, por la cual reiteró los planteamientos de la primera *Contestación a la Demanda* con *Reconvención.*[12]

Posteriormente, el 13 de octubre de 2023, el Banco Popular presentó una *Moción en Cumplimiento de Orden, Contestando Reconvención y Solicitando su Desestimación.*[13]

Ese mismo día, la parte apelada presentó una *Moción en Solicitud de Sentencia Sumaria.*[14]

El 6 de noviembre de 2023, el Banco Popular presentó una *Moción Informativa y Reiterando que se Desestime la Reconvención y se dicte Sentencia Sumaria.*[15]

Subsiguientemente, el 7 de diciembre de 2023, el Banco Popular presentó una *Segunda Moción Informativa y Reiterando que se Desestime la Reconvención y se dicte Sentencia Sumaria.*[16]

Así las cosas, el 13 de diciembre de 2023, el TPI emitió una *Sentencia Parcial*, notificada y archivada en autos el 15 de diciembre de 2023,[17] por la que declaró con lugar la solicitud del Banco Popular para desestimar las reconvenciones presentadas por la causante y, posteriormente por la parte apelante el 11 de enero de 2023 y el 3 de octubre de 2023, respectivamente.[18] El foro *a quo* fundamentó su determinación en que, como la parte apelante no efectuó los pagos mensuales con puntualidad a su vencimiento, la parte apelada tiene derecho a declarar la deuda vencida en su totalidad y proceder a su cobro, a tenor con los términos del contrato; a saber, la escritura de hipoteca.

---

[12] *Íd.,* Anejo XXXIII, págs. 111-117.
[13] *Íd.,* Anejo XXXVI, págs. 125-129.
[14] *Íd.,* Anejo XXXVII, págs. 130-142.
[15] *Íd.,* Anejo XL, págs. 147-148.
[16] *Íd.,* Anejo XL, págs. 145-146.
[17] *Íd.,* Anejo XLI, págs. 149-153.
[18] *Íd.,* Anejo VII, págs. 51-57; *Íd.,* Anejo XXXIII, págs. 111-117.

Por último, el 14 de diciembre de 2023, el foro primario emitió una *Relación del Caso, Declaración de Hechos Probados, Conclusiones de Derecho y Sentencia Sumaria*, notificada y archivada el 15 de diciembre de 2023.[19]

Inconforme, el 19 de enero de 2024, la parte apelante acudió ante nos mediante el presente recurso de *Apelación*, en el que le atribuyó al TPI la comisión del siguiente error:

> PRIMER ERROR - **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA DECLARANDO CON LUGAR LA DEMANDA Y CONDENANDO A LOS APELA[LANTES] AL PAGO DE "LOS CRÉDITOS ACCESORIOS Y ADELANTOS HECHOS EN VIRTUD DE LA ESCRITURA DE HIPOTECA; Y LAS COSTAS, GASTOS Y HONORARIOS DE ABOGADO EQUIVALENTES A $8,742.30. ADEMÁS [SIC] LA PARTE DEMANDADA SE COMPROMETIÓ A PAGAR LA SUMA EQUIVALENTE A $8,742.30 PARA CUBRIR CUALQUIER OTRO ADELANTO QUE SE HAGA EN VIRTUD DE LA ESCRITURA DE HIPOTECA Y UNA SUMA EQUIVALENTE A $8,742.30 PARA CUBRIR INTERESES EN ADICIÓN A LOS GARANTIZADOS POR LEY." SIN HABER LA PARTE DEMA[ND]ANTE PRESENTADO EVIDENCIA SOBRE LAS SUMAS RECLAMADAS COMO "ADELANTADOS" O INTERESES ADICIONALES GARANTIZADOS POR LEY[.]**

En síntesis, la parte apelante plantea que procede declarar nula la *Sentencia* recurrida porque el Banco Popular no presentó evidencia sobre los adelantos otorgados en virtud de la escritura de hipoteca y otros intereses garantizados por ley.

Por su parte, la parte apelada compareció ante nos el 20 de febrero de 2024 y alegó que las partidas impuestas para cubrir cualquier adelanto realizado en virtud de la hipoteca y los intereses adicionales a los garantizados por ley fueron estipuladas libremente. Por lo tanto, sostuvo que las partes contratantes están obligadas a cumplir con esos acuerdos y deberán asumir las consecuencias ante algún incumplimiento.

---

[19] *Íd.,* Anejo XLII, págs. 154-165.

En vista del error imputado al TPI, exponemos la normativa jurídica atinente a este recurso.

**-II-**

**-A-**

Como asunto de umbral, es meritorio reiterar el estándar de revisión de nuestro Tribunal en casos de solicitudes de sentencia sumaria.

Es harto conocido que la solicitud de sentencia sumaria "es un mecanismo procesal que posibilita la ágil disposición de casos sin la celebración de un juicio, siempre que no presenten controversias genuinas de hechos materiales". *Birriel Colón v. Supermercado Los Colobos*, 2023 TSPR 120 (2023); véase, además, *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022); *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 208 DPR 310, 334 (2021). Según establece la Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3 (e), procede dictar una moción de sentencia sumaria "si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente". Véase, además, *Birriel Colón v. Supermercado Los Colobos, supra*; véase, además, *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015); *SLG Zapata Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Para ello es menester que la parte promovente establezca su derecho con claridad y demuestre que no existe controversia sustancial o real respecto a algún hecho material. *Birriel Colón v. Supermercado Los Colobos, supra*; *Meléndez González et al. v. M. Cuebas, supra*, págs. 109-110. Asimismo, nuestro más alto foro ha establecido que, un hecho material es "*aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable*". *Meléndez González et al. v. M. Cuebas, supra*, pág. 110

(Énfasis en el original); véase, además, *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).

Por otra parte, la parte que se opone a la solicitud de sentencia sumaria deberá refutar los hechos materiales que entienda están en disputa con evidencia sustancial. *Birriel Colón v. Supermercado Los Colobos, supra*; *Fernández Martínez v. RAD-MAN San Juan III-D, LLC, supra*, págs. 336-337. Ahora bien, si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte que se opone no puede descansar en meras alegaciones. *Birriel Colón v. Supermercado Los Colobos, supra*; véase, además, *Ramos Pérez v. Univisión, supra*, pág. 215. Aun así, aunque no se presente prueba para controvertir la evidencia presentada, ello no conduce a la concesión automática de una solicitud de sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos, supra*; *Fernández Martínez v. RAD-MAN San Juan III-D, LLC, supra*, pág. 337.

Nuestro más alto foro estableció en *Meléndez González et al. v. M. Cuebas, supra*, págs. 117-119, el estándar específico que debemos seguir como Tribunal de Apelaciones al momento de revisar denegatorias o concesiones de solicitudes de sentencia sumaria.

Primero, nos encontramos en la misma posición que el foro primario al momento de revisar las mociones de sentencia sumaria. *Meléndez González et al. v. M. Cuebas, supra*, pág. 118. En otras palabras, se aplicarán los mismos criterios que la Regla 36 de Procedimiento Civil, *supra*, R. 36, le exige al foro *a quo*. Sin embargo, no podemos tomar en consideración evidencia que las partes no presentaron ante el TPI. Aun así, la revisión por parte de este Tribunal es *de novo* por lo cual debemos examinar el expediente de la forma más favorable hacia la parte que se opuso a la moción de sentencia sumaria, "llevando a cabo todas las inferencias permisibles a su favor". *Meléndez González et al. v. M. Cuebas, supra*, pág. 118.

Segundo, al encontrarnos en la misma posición que el foro *a quo*, debemos revisar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra*, y los discutidos en el caso de *SLG Zapata Rivera v. J.F. Montalvo, supra. Meléndez González et al. v. M. Cuebas, supra*, pág. 118.

Tercero, nuestro Tribunal debe revisar si en realidad existen hechos materiales en controversia. Íd. De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, y exponer cuáles son los hechos materiales que están en controversia y cuáles son incontrovertidos. Íd.

Cuarto y último, si este Tribunal encuentra que los hechos materiales están incontrovertidos, debemos revisar *de novo* si el TPI aplico correctamente el derecho. Íd., pág. 119.

-**B**-

Nuestro más alto foro ha establecido que en nuestra jurisdicción rige el principio de libertad de contratación o de autonomía de la voluntad, siempre que lo pactado no sea contrario a la ley, la moral y las buenas costumbres. Artículo 1232 del Código Civil de 2020, 31 LPRA sec. 9753; *Pérez Rodríguez v. López Rodríguez,* 210 DPR 163, 187 (2022); *Engineering Services International, Inc. v. Autoridad de Energía Eléctrica de Puerto Rico,* 209 DPR 1012, 1027 (2022). En esta misma línea, "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley". Artículo 1233 del Código Civil de 2020, *supra*, sec. 9754; véase, además, *Unión General de Trabajadores v. Centro Médico del Turabo, Inc.*, 2023 TSPR 86 (2023); *American Federation Musician, Local 55 (Unión) v. Corporación Sinfónica de Puerto Rico,* 211 DPR 491 (2023).

Ahora bien, cuando los términos de un contrato son claros y no dejan duda sobre la intención de las partes contratantes, procede el sentido literal de sus cláusulas. *Díaz Rodríguez v. García Neris,* 208

DPR 706, 721 (2022); *Aponte Valentín v. Pfizer Pharmaceuticals*, LLC, 208 PR 263, 286 (2021). Asimismo, nuestro más alto foro expresó en C.*F.S.E. v. Unión de Médicos*, 170 DPR 443, 450 (2007), que "[l]os términos de un contrato son claros cuando son suficientes en contenido para ser entendidos en un único sentido, sin dar lugar a dudas o controversias, sin diversidad de interpretaciones y sin necesitar, para su comprensión, razonamientos o demostraciones susceptibles de impugnación".

**-C-**

Según explica la Exposición de Motivos de la *Ley para Agilizar el Registro de la Propiedad*, Ley Núm. 216 del 27 de diciembre de 2010, 30 LPRA secs. 1821 *et seq.*:

> El Registro de la Propiedad es el organismo del gobierno que registra y guarda constancia de los actos y contratos relativos al trámite jurídico de los bienes inmuebles y los derechos anotables sobre los mismos. Su característica principal es dar publicidad a estos actos y contratos. Aun cuando el Registro es declarativo y los derechos se crean fuera de éste, por excepción, las hipotecas y documentos sobre propiedad horizontal nacen jurídicamente al quedar inscritos. Véase, además, *Delgado Pol v. Pietri Vélez*, 208 DPR 557, 574 (2022); *DLJ Mortgage Capital, Inc. v. García Ramos*, 207 DPR 28, 54-55 (2021); *Haedo Castro v. Roldán Morales*, 203 DPR 324, 341 (2019).

La hipoteca es un derecho real, indivisible y accesorio. Por lo tanto, es un requisito esencial que se constituya la hipoteca para asegurar el cumplimiento de una obligación principal, a la cual está subordinada. Artículos 991 y 993 del Código Civil de 2020, *supra*, secs. 8671, 8673; véase, además, *Delgado Pol v. Pietri Vélez*, *supra*, pág. 573; *DLJ Mortgage Capital, Inc. v. García Ramos*, *supra*, pág. 53; *Soto Sola v. Registradora*, 189 DPR 653, 662 (2013); *Haedo Castro v. Roldán Morales*, *supra*, pág. 341; *Dist. Unidos Gas v. Sucn. Declet Jiménez*, 196 DPR 96, 110 (2016). Incluso, "[s]u dependencia a la obligación principal es de tal grado que si la primera es nula o inexistente, la hipoteca también será nula o inexistente". *Soto Sola v. Registradora*, *supra*, pág. 662.

Por otro lado, la *Ley de Transacciones Comerciales*, Ley Núm. 208 del 17 de agosto de 1995, 19 LPRA sec. 504 (Ley Núm. 208-1995), establece que un instrumento negociable es:

> [U]na promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo:
> (1) es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;
> (2) es pagadero a la presentación o en una fecha específica; y
> (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero, pero la promesa u orden puede contener (i) un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago, (ii) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma, o (iii) una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección a un deudor. Véase, además, *Delgado Pol v. Pietri Vélez, supra*, pág. 573.

Asimismo, un pagaré hipotecario es "un compromiso escrito de pagar dinero suscrito por la persona que se obliga a pagar". Íd., sec. 503; véase, además, *Delgado Pol v. Pietri Vélez, supra*, pág. 573. De hecho, para que se constituya la promesa es indispensable que el deudor se comprometa a pagar la obligación. Ley Núm. 208-1995, *supra*, sec. 503.

**-D-**

En lo concerniente a una reclamación en cobro de dinero, la parte demandante debe probar que existe una deuda válida, que la misma no se ha pagado, que la parte demandante es el acreedor, y los demandados son sus deudores. *General Electric v. Concessionaires, Inc.*, 118 DPR 32, 43 (1986). A esos fines el Tribunal Supremo de Puerto Rico ha reiterado que **<u>únicamente</u>** podrán reclamarse por la vía judicial aquellas deudas que hayan advenido **líquidas**, vencidas y exigibles. Véanse, *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001); *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950). Por un lado, una deuda es líquida cuando la deuda es cierta y determinada. *Ramos y otros v. Colón y otros, supra*, pág. 546. A esos efectos, una deuda es

exigible cuando puede demandarse su cumplimiento. *Guadalupe v. Rodríguez, supra,* pág. 966.

Acorde con esta norma, el 20 de diciembre de 2013, un Panel hermano en el caso de *Doral Bank v. Berdut Teruel,* KLAN201301560, pág. 5 expresó lo siguiente:

> Si bien expresamente surge de la escritura pública pertinente a la constitución de la referida garantía, la obligación del apelante al respecto, lo cierto es que requerirle cumplir con lo pactado sin efectivamente establecer que hubo una inversión real por razón de tales "adelantos", constituye un acto contrario a derecho. **El mero hecho de que los comparecientes hayan convenido separar un diez por ciento (10%) del principal original estipulado para cubrir tal partida, no implica que se deba proveer para su inmediata satisfacción. Corresponde a la institución apelada demostrar al Tribunal de Primera Instancia la existencia de dicha acreencia,** permitiéndole, a su vez, al apelante, refutar las alegaciones en su contra. Una vez cumplida la carga probatoria, ello al definir el alegado valor al descubierto por concepto de adelantos, es que procede, entonces, requerir al apelante la cantidad pactada para tal fin. **El anterior análisis también constituye el fundamento en el cual se apoya nuestra determinación de que tampoco procede imponer el pago de cien mil dólares ($100,000.00) al apelante para cubrir los "intereses en exceso a los garantizados por ley", sin que se haya determinado la suma específica alegadamente adeudada. Tal y como sucede con la partida de los "adelantos" por razón de la hipoteca, nada en la sentencia apelada ni en los documentos que conforman el expediente que nos ocupa, establece con exactitud la cuantía correspondiente a este último concepto. Los documentos acreditativos de la deuda en disputa, no son suficientes a los fines de legitimar todas las cuantías que en virtud de la misma la entidad apelada propone.** Ante ello, corresponde al Tribunal de Primera Instancia adentrarse en los detalles del progreso de las cuantías en cuestión, para así evitar la posibilidad de penalizar a un deudor con el pago de una suma de dinero por la cual puede que no venga obligado a responder. . . .Véase, además, *MM Fashion, Inc. v. Fernández y Corripio, Inc.,* KLAN201300646, en la pág. (TA PR del 27 de noviembre de 2013)

**-III-**

En el caso ante nuestra consideración, la parte apelante planteó un solo señalamiento de error. Específicamente, arguyó que el Banco Popular no presentó prueba de los adelantos u otros intereses garantizados por ley, y, por ello sostiene que no se le puede exigir el

pago reclamado por ello. Por su parte, la parte apelada alegó que las partidas impuestas para cubrir cualquier adelanto realizado, así como los intereses adicionales a los garantizados por ley fueron acordadas y la parte apelante debe asumir las consecuencias por el incumplimiento con los pagos mensuales requeridos para amortiguar la cantidad principal.

Tras un minucioso análisis de los hechos particulares, así como la totalidad del expediente de este caso, concluimos que incidió el foro primario.

Si bien surge del expediente evidencia del pagaré y la escritura de hipoteca suscrita entre las partes contratantes, lo cierto es que, el Banco Popular **no demostró** la existencia de una deuda líquida y exigible, en cuanto a las dos partidas impugnadas por los apelantes. *General Electric v. Concessionaires, Inc.*, *supra*, pág. 43; *Ramos y otros v. Colón y otros, supra*, pág. 546; *Guadalupe v. Rodríguez, supra*, pág. 966. Para ello, la parte demandada debió haber alegado, y sustentado con prueba, un monto cierto y determinado por los otros alegados adelantos que se hicieron. A tenor con ello, la sección "Third" de la escritura de hipoteca expresa que:

> Con el propósito de garantizar el total y completo pago de la deuda que evidencia el pagaré descrito anteriormente, así como todas y cada una de las condiciones que el mismo contiene, y para garantizar además, tres sumas adicionales de DIEZ POR CIENTO DE LA CANTIDAD ORIGINAL DEL PRESTAMO cada una, ----que se fijan para cubrir (a) **intereses además de los garantizados por ley**, (b) la suma que el deudor se obliga a satisfacer como una suma líquida sin necesidad de liquidación y aprobación por el tribunal para costas, gastos y honorarios de abogado para el caso de que el tenedor del pagaré tome acción Judicial en ejecución de hipoteca y (c) **cualesquiera otros adelantos que puedan hacerse dentro de este contrato además de las cantidades que el pagaré expresa**, el Deudor Hipotecario por la presente constituye una Primera Hipoteca (Hipoteca) sobre la Propiedad que ha sido descrita. . .".[20]

---

[20] Apéndice de la *Escrito en Oposición a Apelación*, Anejo II, págs. 2-3. (Subrayado y énfasis suplido).

Sin embargo, la parte apelada no presentó evidencia de una deuda líquida y exigible a su favor, pues no surge de la documentación que obra en el expediente. De hecho, tampoco es alegado por la parte apelada, que en efecto se realizaran "cualesquiera otros adelantos" a favor de la parte la señora Meléndez Alicea. Así las cosas, le asiste la razón a la parte apelante cuando plantea que la parte apelada no presentó evidencia sobre la existencia los referidos adelantos. Tampoco se evidenció la procedencia de intereses adicionales a los garantizados por ley, su naturaleza y cuantía.

Consecuentemente, en el caso de marras, contrario al dictamen del TPI, no procedía la imposición del pago del 10% de la suma principal del préstamo para cubrir adelantos otorgados a tenor con la escritura de hipoteca e intereses en exceso a los garantizados por ley sin sostenerse la procedencia de dichos pagos.

**-IV-**

Por los fundamentos expuestos, modificamos la determinación recurrida a los efectos de revocar la imposición del pago de "una suma equivalente a **$8,742.30** para cubrir cualquier otro adelanto que se haga en virtud de la escritura de hipoteca y una suma equivalente a **$8,742.30** para cubrir intereses en adición a los garantizados por ley".[21]

Lo acuerda y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[21] Apéndice de la *Apelación*, Anejo XLII, pág. 164.