ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **CARIBE FEDERAL CREDIT UNION**<br><br>Apelado<br><br>v.<br><br>**ANGELISSE MARCANO, JOSÉ MANUEL RIVERA RAMOS y la Sociedad Legal de Gananciales compuesta por ambos**<br><br>Apelantes | KLAN202500048 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Caguas**<br><br>Civil Núm.:<br>**CY2024CV00287**<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de febrero de 2025.

Comparece ante nos, mediante *Apelación a Sentencia* presentada el 17 de enero de 2025, la señora Angelisse Marcano (Sra. Marcano). Mediante el escrito apelativo, la Sra. Marcano nos ha solicitado que revoquemos la *Sentencia* emitida el 20 de diciembre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI).[1] El 27 de enero de 2025, la parte apelada, Caribe Federal Credit Union (CFCU), presentó una *Solicitud de Desestimación* por la Sra. Marcano haber incumplido con nuestro Reglamento, 4 LPRA Ap. XXII-B, al presentar el recurso de apelación.

Por los fundamentos que discutiremos a continuación, confirmamos la *Sentencia* dictada.

---

[1] Tomamos conocimiento judicial del caso CY2024CV00287 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada Núm. 8. Notificada y archivada en autos el 2 de enero de 2025.

**I.**

El caso de autos originó el 21 de junio de 2024, luego de que CFCU presentase una *Demanda* sobre cobro de dinero en contra de la Sra. Marcano.[2] CFCU alegó que la Sra. Marcano le adeudaba $36,895.74 de principal, intereses a razón de 8.25% anual hasta el total saldo del principal y 4% de gastos por mora de cada pago vencido. Además, alegó que la Sra. Marcano se obligó a pagarle a CFCU el 25% del total de la reclamación judicial por concepto de honorarios más las costas y gastos que el pleito genere.[3] Alegó que la deuda señalada era líquida y exigible, y que los intentos de cobrarle a la Sra. Marcano habían sido infructuosos, por lo que procedía la presente acción.[4]

El 16 de septiembre de 2024, CFCU le presentó al TPI copia del emplazamiento debidamente diligenciado con fecha de 7 de septiembre de 2024.[5] En consecuencia, comenzó a transcurrir el término de treinta (30) días dispuesto en la Regla 10.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.1, para que la Sra. Marcano contestase la *Demanda.* Transcurrido dicho término sin la comparecencia de la parte demandada, el 19 de diciembre de 2024, CFCU presentó una *Solicitud de Anotación de Rebeldía y Se Dicte Sentencia Conforme a lo Solicitado.*[6]

Así las cosas, el 20 de diciembre de 2024, el TPI dictó la *Sentencia* apelada.[7] En esta, el TPI señaló que, como la parte demandada no había comparecido dentro del término dispuesto en la Regla 10.1 de Procedimiento Civil, procedía que se le anotara la Rebeldía. En consecuencia, el TPI concluyó que la deuda era líquida

---

[2] Entrada Núm. 1 en SUMAC.
[3] *Íd.*, págs. 1-2.
[4] *Íd.*, pág. 2.
[5] Entrada Núm. 5 en SUMAC.
[6] Entrada Núm. 6 en SUMAC.
[7] Entrada Núm. 8 en SUMAC.

y exigible, por lo que declaró Ha Lugar la *Demanda*. Esta determinación no fue notificada hasta el 2 de enero de 2025.

El 27 de diciembre de 2024, la Sra. Marcano compareció por derecho propio y presentó una *Contestación a Demanda*.[8] En esta, señaló que no había comparecido anteriormente puesto que el 19 de noviembre de 2023, contrató los servicios de National Debt Relief (NDR). Informó que, a su entender, el *Debt Negotiation Agreement* que había acordado con NDR incluía una cláusula para que esta entidad la representara en las acciones de cobro de dinero presentadas en su contra. No obstante, al enterarse de la *Solicitud de Anotación de Rebeldía*, se comunicó con NDR, que le informó que la organización no tenía oficinas legales en Puerto Rico, por lo que no la estaría representando. También informó que se ha visto impedida de atender el caso presentado en su contra debido a la atención que le ha dado al cuido de su hijo incapacitado y de su madre, que estuvo enferma y falleció el 20 de octubre de 2024. Por lo tanto, le solicitó al TPI que le concediera "tiempo para que NDR conceda un contrato de compromiso con Caribe Federal".[9]

Compareció nuevamente el 7 de enero de 2025 y presentó una *Contestación a Demanda Evidencia Adicional*, informando que ella y su esposo están casados bajo el régimen de separación de bienes/capitulaciones.[10] Ese mismo día, CFCU presentó un *Memorando de Costas*.[11] Así las cosas, el 13 de enero de 2025, el TPI emitió una serie de órdenes. Con relación a las mociones presentadas por la Sra. Marcano, el TPI instruyó a la parte demandada a que hiciera referencia a la *Sentencia* emitida el 20 de

---

[8] Entrada Núm. 7 en SUMAC.
[9] *Íd.*, pág. 2.
[10] Entrada Núm. 9 en SUMAC.
[11] Entrada Núm. 10 en SUMAC.

diciembre de 2024.[12] El 17 de enero de 2024, el TPI aprobó el *Memorando de Costas*.[13]

Inconforme con aquella determinación, el 17 de enero de 2025, la Sra. Marcano presentó, por derecho propio, la apelación ante nuestra consideración. En esta, solicitó la revocación de la *Sentencia* emitida y que se le concediera un término para que NDR negociara y llegara a un acuerdo con CFCU.

El 27 de enero de 2025, CFCU presentó una *Moción de Desestimación* por el incumplimiento de la parte apelante con las disposiciones de la Regla 16 de Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 16. Arguyó que el hecho de que la Sra. Marcano haya comparecido por derecho propio no la releva de su obligación de cumplir con el Reglamento del TA. Señala una serie de incumplimientos de forma, con los cuales la Sra. Marcano incumplió. Al evaluar el recurso apelativo presentado a la luz de los principios que guían la labor apelativa de los tribunales, declaramos No Ha Lugar la *Moción de Desestimación* presentada por CFCU. El Reglamento del Tribunal de Apelaciones debe ser interpretado a los fines de implantar el principio rector de que las controversias judiciales se atienden en los méritos y no se desestiman los recursos por defectos de forma que no afecten los derechos de las partes. *Íd.,* R. 2 (3).

**II.**

**A.**

La rebeldía es la consecuencia del desinterés o incumplimiento de la parte demandada. Una anotación de rebeldía conlleva las siguientes consecuencias: (1) admite todos los hechos bien alegados en la demanda; (2) autoriza al tribunal para que dicte sentencia si esta procede como cuestión de derecho; y, (3) equivale

---

[12] Entradas 11 y 12 en SUMAC.
[13] Entrada 13 en SUMAC.

a una renuncia a toda notificación posterior. La anotación de rebeldía no es permanente ni absoluta, por lo que una parte podrá solicitar que se deje sin efecto por cualquier causa justificada. Ahora bien, en el caso que se haya dictado una sentencia en rebeldía, "es más difícil dejarla sin efecto. Hay que entrar por los canales de la R. 49.2 [de Procedimiento Civil], que fija taxativamente los casos en que puede dejarse sin efecto anotaciones de rebeldía". R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho procesal civil*, 6ª ed. rev., San Juan, LexisNexis de PR, Inc., 2017, pág. 332.

En el proceso judicial ordinario, la Regla 49.2 de Procedimiento Civil, *supra*, R. 49.2, permite que un tribunal releve a una parte de una sentencia, orden o resolución por, entre otras razones, error, inadvertencia, sorpresa o negligencia excusable. *Íd.*

> Al momento de evaluar la procedencia de una moción de relevo de sentencia, el tribunal tiene el deber de tomar en consideración ciertos criterios inherentes de la Regla 49.2 de Procedimiento Civil, entre éstos: si el peticionario tiene una buena defensa en sus méritos; el tiempo que media entre la sentencia y la solicitud del relevo, y el grado de perjuicio que pueda ocasionar a la otra parte la concesión del relevo de sentencia.

*Reyes v. E.L.A. et al.*, 155 DPR 799, 809-810 (2001).

Al tribunal se le reconoce amplia discreción en el examen sobre la procedencia de una solicitud de relevo de sentencia, disponiéndose que este mecanismo debe interpretarse de forma amplia y liberal a favor del peticionario. *Díaz v. Tribunal Superior*, 93 DPR 79 (1966). La moción de relevo deberá ser presentada conforme a la Regla 49.2 y dentro del término que esta dispone. Ahora bien, el relevo de sentencia es un mecanismo procesal que debe originarse en el tribunal que dictó la sentencia, por lo que un foro apelativo no podrá conceder aquel remedio si no ha sido presentado primero en instancia.

**C.**

Sabido es que los contratos constituyen ley entre las partes, y estas vienen obligadas a cumplir estrictamente con lo pactado. Artículo 1230, 1232 y 1233 del Código Civil de Puerto Rico, 31 LPRA secs. 9751, 9752 y 9754. Nuestro ordenamiento jurídico ha reconocido el "préstamo" como un contrato bilateral en el cual "el prestamista se obliga a entregar al prestatario, a título de propiedad, una determinada cantidad de bienes fungibles y este se obliga a restituir al prestamista esa misma cantidad de bienes, de la misma especie y calidad". *Íd.*, Artículo 1324. Sobre el particular, nos dice la tratadista Margarita García Cárdenas que:

> [E]l contrato de préstamo es un contrato consensual. Cuando existe objeto, consentimiento y causa, nace una obligación del acreedor a entregar un objeto al deudor. La perfección produce una obligación de dar. La entrega no es la perfección del contrato, sino, en vez, el cumplimiento de la obligación del acreedor de entregar el objeto. Esta es la primera fase del contrato. Falta todavía el cumplimiento del deudor de dar otro tanto de la misma especie y calidad al acreedor.
>
> M. García Cárdenas, *Contratos en particular: Tomo I Código Civil 2020*, 1ª ed. rev., San Juan, MJ Editores, 2024, pág. 148.

Dicho de otra manera, mediante el contrato de préstamo, un acreedor (el prestamista) se obliga a entregarle al deudor (el prestatario) un objeto. El objeto entregado puede ser cualquier bien legal y fungible, como lo sería el dinero en un contrato de préstamo entre una persona e institución bancaria. Entregado el objeto, el deudor tiene la obligación de restituir al acreedor esa misma cantidad de bienes.

Ahora bien, la frase "la misma cantidad de bienes, de la misma especie y calidad" no significa que el contrato de préstamo es gratuito. Los Artículos 1327 y 1328 del Código Civil disponen que "[e]l préstamo, salvo pacto distinto, es oneroso" y "[e]n el préstamo de dinero el prestatario debe los intereses conforme a lo convenido o en la cantidad que disponen las leyes, los reglamentos, las órdenes

administrativas o los usos", respectivamente. Código Civil, *supra*, Artículos 1327 y 1328. La tratadista García Cárdenas reconoce que "[e]l Código [Civil] no hace referencia a que lo devuelto sea del mismo valor económico que lo entregado. [...] De hecho, cuando el préstamo es de dinero, el valor adquisitivo de este casi nunca es igual por las fluctuaciones económicas". M. García Cárdenas, *op. cit.*, págs. 156-157. Precisamente esta es la razón principal por la cual se suelen imponer intereses o cláusulas de estabilización.

Finalmente, nuestro ordenamiento jurídico reconoce que las partes podrán pactar cláusulas con el propósito de evitar el incumplimiento con una obligación. Dichas cláusulas se activan cuando hay un incumplimiento y las mismas "pueden consistir en el pago de una suma cierta, la pérdida del beneficio del plazo o en cualquier otra pena". Código Civil, *supra*, Artículo 1257. El tribunal sólo podrá "atemperar las penas en casos de extrema desproporción económica entre la pena y la prestación, debe reconocer la obligatoriedad de las cláusulas convenidas y solo en tales casos puede sustituirlas o moderarlas". *Íd.*

Dado el incumplimiento contractual, la parte acreedora podrá presentar una causa de acción sobre cobro de dinero para obligar el pago de una deuda líquida, vencida y exigible. Nuestro Tribunal Supremo ha resuelto que "[u]na deuda es 'líquida' cuando la cuantía de dinero debida es 'cierta' y 'determinada'", *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001); está vencida cuando el deudor ha dejado de pagar según pactado en el contrato o según surja de la obligación, *Saldaña v. Rodríguez*, 50 DPR 652 (1936); y "exigible" cuando "puede demandarse su cumplimiento", *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950). Demostrado esto, procede una acción por cobro de dinero.

**III.**

Analizado el derecho aplicable, nos encontramos en posición para resolver. En síntesis, la Sra. Marcano nos ha solicitado que revoquemos la determinación del TPI porque el foro de instancia no le permitió contestar la *Demanda*. Tras revisar el expediente, es forzoso confirmar al TPI. Veamos.

Según los hechos, la Sra. Marcano fue emplazada el 7 de septiembre de 2024. Conforme las Regla 10.1 de Procedimiento Civil, *supra*, R.10.1, es a partir de esta fecha que comenzó a transcurrir el término de treinta (30) días para que la demandada presentase su contestación a la *Demanda*. Dicho término venció el lunes, 7 de octubre de 2024. Vencido el término dispuesto por las Reglas de Procedimiento Civil sin la comparecencia de la Sra. Marcano, el 19 de diciembre de 2024, CFCU solicitó que se le anotara la rebeldía y que se dictara sentencia en contra de la parte demandada. Conforme la Regla 45.1 de Procedimiento Civil, *Íd.*, R. 45.1, el TPI actuó dentro de sus facultades y discreción al anotarle la rebeldía a la Sra. Marcano y resolver conforme los hechos bien alegados en la *Demanda* presentada.

Como la anotación de rebeldía tiene el efecto de que se den por admitidos los hechos correctamente alegados en la *Demanda*, el TPI actuó correctamente al concluir que procedía la acción de cobro de dinero. En primer lugar, quedó incontrovertido el hecho de que la Sra. Marcano y CFCU firmaron un *Contrato de Préstamo* firmado el 25 de marzo de 2021.[14] Según la *Declaración Jurada* suscrita por Sol Myriam Morales Cebollero, gerente de cobros de CFCU, la deuda no había sido pagada total ni parcialmente a pesar de gestiones realizadas a tales efectos.[15] En consecuencia, la deuda señalada era líquida, vencida y exigible. Por otro lado, las partes contractuales

---

[14] Entrada Núm. 1, Anejo 2 en SUMAC.
[15] *Íd.*, Anejo 1.

habían pactado cláusulas penales para evitar el incumplimiento. Por lo tanto, procedía que el TPI declarara Ha Lugar la *Demanda*.

Así las cosas, el 20 de diciembre de 2024, el TPI emitió una *Sentencia*. No fue hasta el 27 de diciembre de 2024, luego de haberse anotado la rebeldía y dictado *Sentencia* en su contra, que la Sra. Marcano compareció y presentó una *Contestación a Demanda*. Al haberse dictado *Sentencia* el TPI no tomó en consideración la contestación presentada por haberse presentado tardíamente y continuó con los procedimientos. El 17 de enero de 2025, la Sra. Marcano presentó la apelación ante nuestra consideración. Aunque no cumple estrictamente con los requisitos de forma que exigen las Reglas del Tribunal de Apelaciones, lo permitimos en aras de impartir la justicia apelativa. En consecuencia, la Sra. Marcano nos ha solicitado revocar la sentencia.[16] Al revisar el proceder del foro primario, concluimos actuó conforme a las disposiciones de las Reglas de Procedimiento Civil y jurisprudencia aplicable, por lo que procede confirmar la *Sentencia* apelada.

**IV.**

Por los fundamentos discutidos, confirmamos la *Sentencia* del TPI.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[16] El remedio que nos ha solicitado la Sra. Marcano es que la relevemos de los efectos de la *Sentencia* al entender que hubo justa causa por su incomparecencia. La Regla 49.2 de Procedimiento Civil establece el procedimiento que una parte debe seguir para solicitar un relevo de sentencia. Si la parte adversamente afectada por una determinación entiende que existe justa causa para ser relevada de sus efectos, esta deberá presentar una moción a esos fines ante el foro que emitió aquella determinación. Resaltamos que este Foro Apelativo ejerce un rol revisor, por lo que no podemos intervenir para conceder un remedio que no haya sido planteado inicialmente ante el foro primario. Como una moción al amparo de la Regla 49.2 no fue presentada ante el TPI, no podemos conceder el remedio solicitado, sino solamente podemos revisar el proceder del TPI según el derecho aplicable.