Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>OSCAR J. PITA RODRÍGUEZ<br><br>Apelante | TA2025AP00651 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso núm.: CA2024CV03090 (401)<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Sánchez Ramos, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de marzo de 2026.

Luego del correspondiente juicio, el Tribunal de Primera Instancia ("TPI") declaró con lugar una demanda de cobro de dinero en conexión con una deuda de tarjetas de crédito. Según se explica en detalle a continuación, concluimos que actuó correctamente el TPI, pues la prueba incontrovertida sustenta la reclamación, por lo cual no tiene pertinencia en este caso la ausencia en los récords bancarios del detalle de compras de las tarjetas.

I.

En septiembre de 2024, el Banco Popular de Puerto Rico (el "Banco") presentó la acción de referencia, sobre cobro de dinero (la "Demanda")[1], en contra del Sr. Oscar J. Pita Rodríguez (el "Deudor"). El Banco alegó que el Deudor había dejado de pagarle las tarjetas de crédito número 377812326762351, con una deuda de $37,530.40, y número 377810988252638, con una deuda de $69,076.56. Sostuvo el Banco que ambas deudas se encontraban

---

[1] Entrada [1], Sistema Único de Manejo y Administración de casos ("SUMAC"), *Demanda.*

vencidas, líquidas y exigibles; también informó que había realizado las gestiones de cobro correspondientes, las cuales resultaron infructuosas.

En enero de 2025, el Deudor contestó la Demanda[2]; admitió que solicitó las facilidades de crédito, pero negó los balances reportados en cada una.

Luego de diversos trámites, el 17 de abril, el Banco presentó una moción de sentencia sumaria (la "Moción")[3]. Alegó que no existía controversia sobre el hecho de que el Deudor adeudaba las cantidades de $37,530.40 y $69,076.56 por haber dejado de pagar las tarjetas de créditos objeto de controversia. Reiteró que, para todos los efectos, la deuda estaba vencida, y que esta era líquida y exigible.

Por su parte, el 12 de mayo, el Deudor se opuso a la Moción[4]. Arguyó que el Banco no puso a la disposición del TPI estados de cuenta que desglosen en qué concepto se constituyó la alegada deuda. Sostuvo que, con los documentos provistos, no se puede evaluar la corrección de la cuantía de la deuda. De igual forma, alegó que existía una posible ausencia de "Contrato de Tarjeta de Crédito", por lo cual no se podían determinar los términos y condiciones que existían en la relación contractual entre las partes.

Evaluado el asunto, el TPI determinó[5] que existían las siguientes controversias de hechos medulares, por lo cual debía denegarse la Moción:

1. Si la parte demandada de epígrafe adeuda a la parte demandante la cantidad de $106,614.56 según alegado en la demanda.
2. Si la deuda reclamada está vencida, es líquida y exigible.

---

[2] Entrada 10, SUMAC, *Contestación a Demanda*
[3] Entrada 18, SUMAC, *Moción de Sentencia Sumaria*
[4] Entrada 24, SUMAC, *Oposición a "Moción de Sentencia Sumaria".*
[5] Entrada 26, SUMAC, *Resolución.*

No obstante, el TPI estableció como hecho no controvertido que "[l]a parte demandada en algún momento obtuvo unas facilidades de crédito de parte del demandante Banco Popular de Puerto Rico"[6].

El 28 de agosto, las partes presentaron de forma conjunta el Informe Sobre Conferencia Con Antelación al Juicio (el "Informe")[7]. En el Informe consta la prueba documental estipulada y la no estipulada. Asimismo, informaron la comparecencia al juicio de dos testigos.

Posteriormente, el 19 de septiembre, se celebró el juicio[8] en su fondo, en el cual comparecieron los siguientes testigos:

- Por la parte demandante, la Sa. Gleidy E. Franco Corporán, Supervisora del Departamento Legal y Recobros (la "Oficial del Banco").
- Por la parte demandada, el Sr. Oscar J. Pita Rodríguez (el Deudor).

Ese mismo día, las partes estipularon los Estados de Cuenta de las Tarjetas de Crédito identificándolos como:

- Estados de Cuenta Tarjeta de Crédito ...2351, "Prueba Conjunta Estipulada – Exhibit 4
- Estados de Cuenta Tarjeta de Crédito ...2638, "Prueba Conjunta Estipulada – Exhibit 5

El 9 de octubre, el TPI notificó una *Sentencia*[9] (la "Sentencia"); se formularon las siguientes Determinaciones de Hechos:

1. Popular es una institución bancaria creada y organizada conforme a las Leyes del Estado Libre Asociado de Puerto Rico, debidamente autorizada a hacer negocios y se dedica, entre otras actividades comerciales, a la concesión de tarjetas de crédito.

2. Pita Rodríguez es mayor de edad, soltero, empleado y vecino de Carolina, Puerto Rico, cuya dirección física es: Cond. Playa Dorada TH 20, Carolina Puerto Rico 00979; y dirección postal es: P.O. Box 79434, Carolina, Puerto Rico 00984.

3. Popular utiliza en el curso ordinario de negocios, como es usual y regular en la industria bancaria, bases de datos electrónicas.

---

[6] *Íd.*
[7] Entrada 27, SUMAC, *Informe Sobre Conferencia Con Antelación al Juicio.*
[8] Entrada 38, SUMAC, *Minuta.*
[9] Entrada 34, SUMAC, *Sentencia.*

4. Popular identifica a sus clientes a través de las bases de datos electrónicas por el número de tarjetas de crédito.

5. Las bases de datos electrónicas utilizadas por Popular son confiables.

6. Las bases de datos electrónicas utilizadas por Popular no son manipulables.

7. Las bases de datos electrónicas utilizadas por Popular le permiten acceder deudas de los clientes, tipos de productos, fechas en que se otorgaron, fechas en que se cancelaron, razones para su cancelación, balances debidos e historiales.

8. Las bases de datos electrónicas utilizadas por Popular se utilizan para cartas de cobro, balances de cancelación, declaraciones juradas, deposiciones y juicios.

9. La información ingresada por Popular en las bases de datos electrónicas se almacena hasta el saldo de la deuda y por un periodo adicional de 7 años conforme a la política de retención.

10. Popular utilizó sus bases de datos electrónicas para la información de Pita Rodríguez pertinente a este caso.

11. Popular, por conducto de la Sra. Franco Corporán, presentó y validó sus récords de negocio para la Tarjeta de Crédito ...2351, según reflejados en las bases de datos electrónicas.

12. Popular, por conducto de la Sra. Franco Corporán, presentó y validó sus récords de negocio para la Tarjeta de Crédito ...2638, según reflejados en las bases de datos electrónicas.

13. El 22 de agosto de 1995, Pita Rodríguez solicitó y/u obtuvo de Popular la Tarjeta de Crédito ...2351.

14. La Tarjeta de Crédito ...2351 llegó a tener un margen de crédito disponible de $33,000.00.

15. El 13 de octubre de 2004, Pita Rodríguez solicitó y/u obtuvo de Popular la Tarjeta de Crédito ...2638.

16. La Tarjeta de Crédito ...2638 llegó a tener un margen de crédito disponible de $61,000.00.

17. Pita Rodríguez utilizó la Tarjeta de Crédito ...2351 obtenida de Popular.

18. Pita Rodríguez nunca objetó los cargos reportados por Popular en los Estados de Cuenta que le fueran remitidos para la Tarjeta de Crédito ...2351.

19. Pita Rodríguez utilizó la Tarjeta de Crédito ...2638 obtenida de Popular.

20. Pita Rodríguez nunca objetó los cargos reportados por Popular en los Estados de Cuenta que le fueran remitidos para la Tarjeta de Crédito ...2638.

21. El último pago realizado por Pita Rodríguez para la Tarjeta de Crédito ...2351 fue el 15 de agosto de 2017.

22. El último pago realizado por Pita Rodríguez para la Tarjeta de Crédito ...2638 fue el 8 de agosto de 2017.

23. El 31 de julio de 2018, Popular cargó a pérdida la Tarjeta de Crédito ...2351, para cuya fecha el margen de crédito disponible de $33,000.00 se había consumido completamente por Pita Rodríguez y este tenía además un sobregiro de $4,538.40, para una deuda total de $37,538.40.

24. Desde que Popular cargó a pérdida la Tarjeta de Crédito ...2351 de Pita Rodríguez con un balance total de $37,538.40, la cuenta dejó de devengar intereses, cargos y recargos adicionales.

25. El 31 de julio de 2018, Popular cargó a pérdida la Tarjeta de Crédito ...2638, para cuya fecha el margen de crédito disponible de $61,000.00 se había consumido completamente por Pita Rodríguez y este tenía además un sobregiro de $8,076.56, para una deuda total de $69,076.56.

26. Desde que Popular cargó a pérdida la Tarjeta de Crédito ...2638 de Pita Rodríguez con un balance total de $69,076.56, la cuenta dejó de devengar intereses, cargos y recargos adicionales.

27. El 6 de septiembre de 2018, Pita Rodríguez radicó la Quiebra #18- 05178.

28. El 20 de septiembre de 2018, Popular radicó el Proof of Claim #3 en la Quiebra #18-05178 de Pita Rodríguez, reclamando un balance de $69,076.56 por razón de la Tarjeta de Crédito ...2638.

29. El 20 de septiembre de 2018, Popular radicó el Proof of Claim #4 en la Quiebra #18-05178 de Pita Rodríguez, reclamando un balance de $37,538.40 por razón de la Tarjeta de Crédito ...2351.

30. Pita Rodríguez no objetó el Proof of Claim #3 radicado por Popular en su Quiebra #18-05178.

31. Pita Rodríguez no objetó el Proof of Claim #4 radicado por Popular en su Quiebra #18-05178.

32. El 5 de octubre de 2018, Pita Rodríguez radicó los "Schedules" en su Quiebra #18-05178.

33. En sus "Schedules" en la Quiebra #18-05178, Pita Rodríguez reconoció el Proof of Claim #3 radicado por Popular, por un balance de $69,076.56 por razón de la Tarjeta de Crédito ...2638.

34. En sus "Schedules" en la Quiebra #18-05178, Pita Rodríguez reconoció el Proof of Claim #4 radicado por Popular, por un balance de $37,538.40 por razón de la Tarjeta de Crédito …2351.

35. El 7 de enero de 2021, Pita Rodríguez radicó la Quiebra #21-00016.

36. El 26 de enero de 2021, Popular radicó el Proof of Claim #2 en la Quiebra #21-00016 de Pita Rodríguez, reclamando un balance de $69,076.56 por razón de la Tarjeta de Crédito …2638.

37. El 26 de enero de 2021, Popular radicó el Proof of Claim #3 en la Quiebra #21-00016 de Pita Rodríguez, reclamando un balance de $37,538.40 por razón de la Tarjeta de Crédito …2351.

38. Pita Rodríguez no objetó el Proof of Claim #2 radicado por Popular en su Quiebra #21-00016.

39. Pita Rodríguez no objetó el Proof of Claim #3 radicado por Popular en su Quiebra #21-00016.

40. El 1 de febrero de 2021, Pita Rodríguez radicó los "Schedules" en su Quiebra #21-00016.

41. En sus "Schedules" en la Quiebra #21-00016, Pita Rodríguez reconoció el Proof of Claim #2 radicado por Popular, por un balance de $69,076.56 por razón de la Tarjeta de Crédito …2638.

42. En sus "Schedules" en la Quiebra #21-00016, Pita Rodríguez reconoció el Proof of Claim #3 radicado por Popular, por un balance de $37,538.40 por razón de la Tarjeta de Crédito …2351.

43. El 13 de noviembre de 2023, Pita Rodríguez radicó la Quiebra #23- 03730.

44. El 13 de diciembre de 2023, Popular radicó el Proof of Claim #1 en la Quiebra #23-03730 de Pita Rodríguez, reclamando un balance de $37,538.40 por razón de la Tarjeta de Crédito …2351.

45. El 13 de diciembre de 2023, Popular radicó el Proof of Claim #3 en la Quiebra #23-03730 de Pita Rodríguez, reclamando un balance de $69,076.56 por razón de la Tarjeta de Crédito …2638.

46. Pita Rodríguez no objetó el Proof of Claim #1 radicado por Popular en su Quiebra #23-03730.

47. Pita Rodríguez no objetó el Proof of Claim #2 radicado por Popular en su Quiebra #23-03730.

48. Popular le hizo gestiones de cobro extrajudiciales a Pita Rodríguez en relación con el balance pendiente de pago de la Tarjeta de Crédito …2351, por $37,538.40, consistente en llamadas telefónicas,

mensajes de voz, visitas, cartas y correos electrónicos.

49. Popular le hizo gestiones de cobro extrajudiciales a Pita Rodríguez en relación con el balance pendiente de pago de la Tarjeta de Crédito …2638, por $69,076.56, consistente en llamadas telefónicas, mensajes de voz, visitas, cartas y correos electrónicos.

50. El 15 de agosto de 2024, Popular, por conducto de su abogado externo, cursó una reclamación extrajudicial a Pita Rodríguez reclamándole el pago de los balances pendiente de pago de la Tarjeta de Crédito …2351 y de la Tarjeta de Crédito …2638, por $37,538.40 y $69,076.56 respectivamente, dirigida a sus dos (2) direcciones en récord.

51. Pita Rodríguez no respondió a las gestiones de cobro extrajudiciales realizadas por Popular, por sí ni a través de su abogado externo.

52. A la fecha de la Demanda, Pita Rodríguez adeudaba a Popular la suma de $37,538.40 por concepto de la Tarjeta de Crédito …2351.

53. A la fecha de la Demanda, Pita Rodríguez adeudaba a Popular la suma de $69,076.56 por concepto de la Tarjeta de Crédito …2638.

54. La deuda de Pita Rodríguez para con Popular de $37,538.40 por concepto de la Tarjeta de Crédito …2351 desde que se cargó a pérdida el 31 de julio de 2018 hasta la fecha de Juicio el 19 de septiembre de 2025 es la misma, pues no devengó intereses, cargos ni recargos adicionales.

55. La deuda de Pita Rodríguez para con Popular de $69,076.56 por concepto de la Tarjeta de Crédito …2638 desde que se cargó a pérdida el 31 de julio de 2018 hasta la fecha de Juicio el 19 de septiembre de 2025 es la misma, pues no devengó intereses, cargos ni recargos adicionales.

56. Pita Rodríguez no presentó prueba alguna que acreditara haber hecho abono alguno o pago del balance pendiente de pago por concepto de la Tarjeta de Crédito …2351 desde el 15 de agosto de 2017 hasta el presente.

57. Pita Rodríguez no presentó prueba alguna que acreditara haber hecho abono alguno o pago del balance pendiente de pago por concepto de la Tarjeta de Crédito …2638 desde el 8 de agosto de 2017 hasta el presente.

58. La deuda de Pita Rodríguez para con Popular por razón de la Tarjeta de Crédito …2351 está vencida, es líquida y exigible.

59. La deuda de Pita Rodríguez para con Popular por razón de la Tarjeta de Crédito ...2638 está vencida, es líquida y exigible.

60. Las gestiones de cobro no rindieron fruto.

Así pues, el TPI determinó que la prueba incontrovertida sustentó las siguientes determinaciones medulares: 1) entre el Banco y el Deudor se perfeccionaron dos contratos validos de cuentas rotativas para el 22 de agosto de 1995 y 13 de octubre de 2004; 2) dichos contratos están vinculados respectivamente con las Tarjetas de Crédito 2351 y 2638; 3) ambas tarjetas fueron utilizadas por el Deudor, y en estas se acumularon los correspondientes balances sin ser objetados hasta la fecha en la que estas fueron cargadas a pérdida; 4) el Deudor adeuda al Banco las sumas $37,538.40 por concepto de la Tarjeta de Crédito ...2351 y $69,076.56 por concepto de la Tarjeta de Crédito ...2638; 5) y las cantidades se encuentran vencidas, líquidas y exigibles.

El 23 de octubre, el Deudor solicitó la *Reconsideración*[10] de la Sentencia, lo cual fue denegado por el TPI mediante una Orden notificada el 7 de noviembre[11].

Así las cosas, el 8 de diciembre (lunes), el Deudor presentó el recurso de apelación ante nuestra consideración; como único error, señala que:

> Erró el Tribunal de Primera Instancia al dictar Sentencia en Cobro de dinero sin evidencia que acreditara tanto los términos de la obligación como la cuantía adeudada.

El Deudor, fundamentalmente, cuestiona la suficiencia de la prueba, basado en que, del testimonio de la Oficial del Banco, surgió que las facturas de los gastos detallados eran eliminadas cada siete años de forma automatizada por el sistema de recopilación de datos del Banco. Arguye que, por tanto, era incompleto el expediente

---

[10] Entrada 35, SUMAC, *Reconsideración.*
[11] Entrada 39, SUMAC, *Orden.*

electrónico del Banco que sirvió de base para el testimonio de la Oficial del Banco. Además, plantea que el Banco no presentó el contrato en evidencia, lo que, a su juicio, imposibilita establecer los términos y condiciones que regían la relación jurídica entre las partes. Finalmente, el Deudor sostiene que los listados de deuda incluidos en sus peticiones de quiebra no constituían una admisión de parte, ello porque esos documentos contienen una advertencia que aclara que no se releva al acreedor de probar el monto adeudado y que no constituyen una admisión sobre la existencia o cuantía de la deuda.

A finales de enero, las partes presentaron una transcripción estipulada del juicio. Luego, el Deudor presentó un alegato suplementario y, el 12 de marzo, el Banco presentó su alegato en oposición. Contando, así pues, con la totalidad de la prueba presentada y los alegatos de las partes, resolvemos.

## II.

El estándar probatorio, en los casos civiles, es la preponderancia de la prueba. Por lo tanto, la decisión del juzgador debe producirse a base de criterios de probabilidad. Regla 110, inciso F, de las Reglas de Evidencia, (32 LPRA Ap. VI). Esto significa que el juzgador le dará valor a la prueba en atención a su calidad, y no necesariamente por su cantidad. La norma es que:

> [e]n muy raras ocasiones es posible determinar un hecho con certeza o exactitud matemática. Exigir ese tipo de prueba a un litigante equivaldría prácticamente a requerirle un imposible. Por esto, la ley y la jurisprudencia se limitan a requerir que los casos se prueben por preponderancia de la prueba, que es tanto como establecer como hechos probados aquellos que con mayores probabilidades ocurrieron. *Zambrana v. Hospital Santo Asilo de Damas*, 109 DPR 517, 521 (1980).

Es decir que, se debe determinar si la evidencia presentada es suficiente para convencer al juzgador de que la existencia de los hechos alegados es más probable que su inexistencia. *Belk v.*

*Martínez,* 146 DPR 215, 231 (1998). Además, la obligación de presentar evidencia recae sobre la parte que sostiene la afirmativa en el asunto en controversia. Regla 110 de Evidencia, *supra.*

### III.

Por otro lado, la prueba de referencia "[e]s una declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". Regla 801 de Evidencia (32 LPRA Ap. VI). Como norma general, la prueba de referencia no es admisible, salvo se disponga lo contrario por ley. Regla 804 de Evidencia (32 LPRA Ap. VI).

La Regla 805(f) de Evidencia (32 LPRA Ap. VI) establece que un récord de actividades que se realizan con regularidad es prueba de referencia admisible aun cuando la persona declarante esté disponible como testigo. La referida disposición legal define lo que es un récord de actividades que se realizan con regularidad y establece los criterios que deben cumplirse. Específicamente, la Regla 805(f) de Evidencia, *supra,* expresa:

> [u]n escrito, informe, récord, memorando o compilación de datos –en cualquier forma- relativo a actos, sucesos, condiciones, opiniones o diagnósticos que se hayan preparado en o cerca del momento en que éstos surgieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta, si dichos récord se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho escrito, informe, récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(k) de este apéndice o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspire falta de confiabilidad. El término "negocio", según se utiliza en este inciso, incluye, además de negocio propiamente, una actividad gubernamental y todo tipo de institución, asociación, profesión, ocupación y vocación, con o sin fines de lucro. (32 LPRA Ap VI).

Lo importante es que una persona declare sobre el proceso de preparación de los récords en el negocio correspondiente, aunque

no haya originado la información; el incumplimiento de este requisito acarrea la exclusión de la prueba. *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967,986(2010), citando a E. L. Chiesa Aponte, Tratado de derecho Probatorio, San Juan, Pubs. J.T.S., 2005, Tomo II, págs. 701-702.

IV.

Por su parte, la Regla 23.1 de las de Procedimiento Civil, sobre el alcance del descubrimiento de prueba, establece en el inciso (d) que las partes están obligadas a preservar aquella prueba que esta sujeta a un descubrimiento de prueba. (32 LPRA Ap. V). Además, esta regla dispone que la información almacenada electrónicamente estará sujeta a la Regla 34.3 de las de Procedimiento Civil. *Íd.*

Atendiendo este asunto, la Regla 34.3 dispone lo siguiente:

> [s]i la parte promovente del descubrimiento de prueba pertinente a las alegaciones o defensas justifica con prueba fehaciente que la parte promovida se niega a descubrir lo solicitado por haber destruido o incumplido con su deber de preservar prueba pendiente de litigio o razonablemente utilizable en un pleito futuro, estará sujeta a las sanciones dispuestas en estas reglas. **El tribunal no podrá ordenar la imposición de sanciones bajo esta regla a una parte por no proveer información almacenada electrónicamente, que demuestre que se ha perdido como resultado de la operación rutinaria de buena fe del sistema de almacenamiento electrónico de información, salvo que antes de efectuar dicha operación se le haya requerido a la parte preservar la prueba. En tal caso, la parte requerida tendrá el peso de demostrar que la información almacenada electrónicamente no pudo ser producida por las razones indicadas anteriormente.** (Énfasis nuestro). (32 LPRA Ap. V).

V.

Las cuentas rotativas, y los contratos de venta al por menor a plazos, se encuentran reglamentados por la Ley Núm. 68 de 19 de junio de 1964 ("Ley 68"), según enmendada, 10 LPRA sec. 731 et seq., conocida como Ley de Ventas a Plazos y Compañías de Financiamiento.

El Artículo 401 de la Ley 68, reglamenta lo referente a la extensión de crédito bajo un Plan de Cuenta Rotativa para Uso de Tarjeta de Crédito. Dicho artículo dispone lo siguiente:

Un emisor de tarjeta de crédito podrá extender crédito y cobrar cargos por financiamiento bajo un plan de cuenta rotativa para uso de una tarjeta de crédito en el cual:

(a) El emisor de la tarjeta de crédito permite que el portador realice transacciones periódicamente;

(b) un cargo por financiamiento o una razón de interés es computado de tiempo en tiempo sobre el balance adeudado por el portador;

(c) el emisor deberá rendir mensualmente al portador estados de cuenta si existe algún balance en la misma o si se ha efectuado transacciones en dicho período;

(d) el balance adeudado según dichos estados será pagadero en una fecha específica según establecido entre las partes o a plazos, a opción del portador, sujeto a los términos y condiciones del acuerdo, y

(e) el balance adeudado es aumentado por el monto de las transacciones efectuadas por el portador, más los cargos por financiamiento computados a tenor con el acuerdo y será reducido por los pagos que efectúe el portador.

El acuerdo de plan de cuenta rotativa para uso de tarjeta de crédito convenido en Puerto Rico entre un emisor autorizado por las leyes de Puerto Rico para emitir tales tarjetas de crédito y el portador de la misma, se regirá por las leyes y reglamentos de Puerto Rico y las leyes y reglamentos federales aplicables, incluyendo, pero sin limitarse a, Truth in Lending Act (15 U.S.C.A. §§ 1601 et seq.) y el Reglamento Z adoptado al amparo de la misma, independientemente del lugar de residencia del portador de la misma. 10 LPRA sec. 766.

Por otro lado, la Oficina del Comisionado de Instituciones Financieras (la "OCIF") es una entidad gubernamental creada en virtud de la Ley Núm. 4 de 11 de octubre de 1985, 7 LPRA sec. 2001 et seq., cuyo propósito principal es el de fiscalizar y supervisar todas las instituciones financieras que operen y hagan negocios en Puerto Rico.

La OCIF administra la Ley 68 y, a tal fin, promulgó el Reglamento para Disponer Sobre los Cargos, Tasas de Interés y

Otros Asuntos Relativos a Planes de Cuentas Rotativas para Uso de Tarjetas de Crédito y Contratos de Ventas al Por Menor a Plazos, Reglamento Núm. 6070, OCIF, 29 de diciembre de 1999 (el "Reglamento").

Sobre las solicitudes de crédito bajo un plan de cuenta rotativa para uso de tarjetas de crédito, la Sección 3 de la Parte II del Reglamento dispone que:

> [u]na persona podrá solicitar crédito bajo un plan de cuenta rotativa para uso de una o más tarjetas de crédito por escrito, por vía telefónica o cualquier otro medio electrónico disponible. En caso de solicitudes por vía telefónica o cualquier otro medio electrónico disponible se entenderá que tal acción constituye una solicitud siempre que el emisor mantenga un récord que la evidencia. El uso por el portador de la tarjeta de crédito se entenderá como su aceptación. (Énfasis suplido).

Además, la Sección 5 (A) y (B) de la Parte II del Reglamento señala que el emisor de una tarjeta de crédito en planes de cuentas rotativas está obligado a enviar al portador de la tarjeta un estado de cuenta al finalizar cada período de facturación que contendrá toda la información requerida por el *Truth in Lending Act* y el Reglamento Z, adoptado al amparo de la legislación federal pertinente. No obstante, el Reglamento señala que, entre otras circunstancias, no será necesario enviar dicho estado de cuenta cuando el emisor haya clasificado la cuenta como incobrable. *Íd.*

## VI.

Para prevalecer en una acción de cobro de dinero, el demandante tendrá que probar que existe una deuda válida, que no ha sido pagada, que él es el acreedor y que la parte demandada es su deudora. *General Electric v. Concessionaires, Inc.,* 118 DPR 32, 43 (1986). Una deuda se considera líquida cuando la suma de dinero que se adeuda es cierta y determinada. *Ramos y otros v. Colón y otros,* 153 DPR 534, 546 (2001). Es decir, "cuando se sabe cuánto es lo que se debe". J.R. Vélez Torres, <u>Derecho de</u>

Obligaciones: Curso de Derecho Civil, 2da. Ed., San Juan, Programa de Educación Jurídica Continua, Facultad de Derecho U.I.P.R., 1997, en la pág. 221.

La determinación de si una deuda está vencida dependerá de su carácter, entiéndase, si está sujeta a algún plazo o condición. J.R. Vélez Torres, en las págs. 220-221. Igualmente, bajo el contexto de la Regla 60 de Procedimiento Civil, "al alegarse que la cuenta es ´líquida y exigible´ se están exponiendo hechos, a saber: que el residuo de la cuantía ha sido aceptado como correcto por el deudor y que está ha vencido". *Río Mar Community Association, Inc. v. Mayol Bianchi*, 208 DPR 100, 109 (2021), citando a *Guadalupe v. Rodríguez*, 70 DPR 958,966 (1950).

VII.

Al ejercer nuestra función revisora, debemos tener en cuenta que:

> [...]ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece nuestra intervención para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Véase *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194,219 (2021); *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022).

En este sentido, le debemos gran respeto y deferencia a las determinaciones de hechos que hace el TPI, así como a su apreciación sobre la credibilidad de testigos y el valor de la prueba desfilada. *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 785 (2022); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-772 (2013); *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011). Lo anterior responde a que los jueces del TPI están en mejor posición para evaluar la prueba ya que tienen la oportunidad de escuchar a los testigos mientras declaran y de observar su comportamiento. *Íd.*

Por lo cual, para determinar si el TPI cometió un error manifiesto o incurrió en una de las conductas descritas, entiéndase

prejuicio, parcialidad o pasión, debemos analizar la totalidad de la evidencia presentada. *Íd.* Evaluada la prueba admitida ante el TPI, este foro está facultado a sustituir su criterio cuando "no exista base suficiente que apoye la determinación". Véase *Pueblo v. Hernández Doble*, 210 DPR a la pág. 865. Siendo este el caso, será meritoria nuestra intervención solo "cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba". *Íd.*

Claro está, se exceptúan de la regla de deferencia las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos están en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *González Hernández*, 181 DPR a la pág. 777.

VIII.

Concluimos que procede la confirmación de la Sentencia, pues la misma está ampliamente sustentada por la prueba que tuvo ante sí el TPI. En efecto, la prueba no controvertida demostró la existencia y cuantía de la deuda reclamada, la cual estaba vencida, líquida y exigible.

Durante su testimonio,[12] la Oficial del Banco afirmó que en el curso ordinario de sus negocios utiliza una "base de datos" que es certera, ya que la información contenida en esta no se puede alterar ni modificar luego de ser introducida. Asimismo, declaró[13] sobre el Exhibit 1 de la parte demandante, Balance de Cancelación de la Tarjeta de Crédito …2351 al 19 de septiembre de 2025. Dicho documento refleja que la apertura de la tarjeta #377812326762351 fue el 22 de agosto de 1995 y que la fecha de pérdida fue el 31 de julio de 2018. También se desprende que el último pago recibido

---

[12] Véase, TPO, Entrada 8, Sistema Único de Manejo y Administración de casos del Tribunal de Apelaciones de Puerto Rico ("SUMAC TA"), a la pág. 7-8.
[13] Véase, TPO, Entrada 8, SUMAC TA, a la pág. 20.

fue el 15 de agosto del 2017, que la cuenta tenía como límite de crédito la cantidad de $33,000.00 y contaba con un sobre giro de $4,538.40, siendo el monto total adeudado $37,538,40. Surge del testimonio de la Oficial del Banco que, una vez la tarjeta de crédito es cargada a pérdida, esta no genera ningún tipo de cargo, penalidad o interés adicional. No consta en el récord que este testimonio fuese objetado.

Por otro lado, la Oficial del Banco declaró[14] sobre el Exhibit 2 de la parte demandante, Balance de Cancelación de la Tarjeta de Crédito ...2638 al 19 de septiembre de 2025. Este documento muestra que la apertura de la tarjeta #377810988252638 fue el 13 de octubre de 2004 y que la fecha de pérdida fue el 31 de julio de 2018. También indicó que el último pago recibido fue el 8 de agosto del 2017, que la cuenta tenía como límite de crédito la cantidad de $61,000.00 y presentaba un sobre giro de $8,076.56, para un total adeudado de $69,076.56. Tampoco se advierte en el récord objeción a este testimonio. Asimismo, la Oficial del banco acreditó, sin objeción alguna, haber realizado las correspondientes gestiones de recobro de la deuda.[15]

Contrario a lo que arguye el Deudor, no tiene pertinencia, dada la prueba anterior no controvertida, que el Banco no presentara el desglose de los gastos asociados a las tarjetas de crédito. Adviértase que, del testimonio[16] de la Oficial del Banco, surge que, como parte del funcionamiento rutinario de las bases electrónicas de la institución, el sistema elimina cada 7 años las facturas que contienen el desglose de los gastos del deudor asociados al uso de la tarjeta de crédito. En ausencia de prueba que controvierta el contenido admisible de los récords bancarios, en

---

[14] Véase, TPO, Entrada 8, SUMAC TA, a la pág. 22.
[15] Véase, TPO, Entrada 8, SUMAC TA, a la pág. 23.
[16] Véase, TPO, Entrada 8, SUMAC TA, a la pág. 33.

torno al total adeudado, el TPI podía y debía dar crédito a la información reflejada en el sistema, el cual continúa custodiando la información del deudor, incluido el balance de la cuenta hasta el momento en que las tarjetas fueron declaradas como pérdida.

Nuestra conclusión se fortalece al advertirse que, según el testimonio[17] (no controvertido) de la Oficial del Banco, durante la relación jurídica, no se presentaron reclamaciones sobre las transacciones realizadas con ambas líneas de crédito. A su vez, el Deudor no presentó evidencia alguna que le permitiese al TPI concluir que pudiese existir alguna irregularidad o imprecisión en conexión con el monto de la deuda, según reflejado en los récords ordinarios de negocio del Banco.

Por otro lado, tampoco tiene mérito el planteamiento del Deudor en torno a la ausencia de un contrato escrito y firmado. Del expediente surge que el Deudor reiteradamente aceptó que obtuvo unas facilidades de crédito de la parte del Banco. Como establece la Ley 68:

> [e]n caso de solicitudes por vía telefónica o cualquier otro medio electrónico disponible se entenderá que tal acción constituye una solicitud siempre que el emisor mantenga un récord que la evidencia. **El uso por el portador de la tarjeta de crédito se entenderá como su aceptación. (Énfasis nuestro.)**

Por lo cual, admitido este hecho, no era necesario probar la existencia de la relación jurídica mediante un contrato escrito entre las partes[18].

---

[17] Véase, TPO, Entrada 8, SUMAC TA, a la pág. 35.

[18] En cuanto a la utilización de los documentos de los procesos de quiebras del Deudor, aun partiendo de la premisa (sin resolverlo, por resultar innecesario) de que tuviese razón el Deudor, se trataría de un error inconsecuente, pues no conllevaría la revocación de la Sentencia. Ello porque, aun descartando por completo la documentación de dichos procesos, comoquiera el TPI contaba con prueba suficiente para sustentar la Sentencia.

Por su parte, tampoco tiene razón el Deudor al descansar en *Río Mar Community Association, Inc. v. Mayol Bianchi,* 208 DPR en las pág. 103. Ello porque, en este caso, a través de un juicio, el Deudor pudo enfrentarse a la prueba demostrativa de que la cantidad reclamada es cierta y determinada; es decir, el Banco presentó evidencia, a través del testimonio de la Oficial del Banco y prueba documental, que le permitió al TPI establecer el inicio de las obligaciones, el incumplimiento con el pago por parte del Deudor y el monto al cual asciende la deuda. Por su parte, el Deudor no presentó prueba conducente a impugnar la existencia de la deuda o la cantidad expuesta por el Banco.

IX.

Por los fundamentos antes expuestos, se confirma la sentencia apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones